DUKE UNIVERSITY v. AMERICAN ARBITRATION ASSOCIATION AND R. B. BRUNEMANN & SONS, INC.

No. 8214SC1061

(Filed 20 September 1983)

**Contracts § 6.1— finding that defendant not general contractor supported by evidence**

A finding that defendant was not a general contractor required to be licensed under G.S. 87-1 was supported by the evidence where defendant did not contract with plaintiff to "erect a building," but rather, contracted to construct a relatively small portion of an extensive construction project. It had no control over the work of the other contractors nor over the construction project as a whole.

APPEAL by plaintiff from *Lee, Judge*. Order entered 11 June 1982 in Superior Court, DURHAM County. Heard in the Court of Appeals 29 August 1983.

This appeal presents the question of whether a parallel prime contractor contracting directly with an owner to construct a portion of a building that costs more than $30,000.00 is a general contractor required to be licensed under G.S. 87-1.

The facts are as follows: Plaintiff contracted with more than 50 separate trade contractors to build Duke Hospital North in Durham, North Carolina at a total cost of approximately $62 million. On 6 August 1976, plaintiff and defendant entered into a written contract under which defendant agreed to fabricate and erect the stucco wall panel system and to perform related lath and plastering work for the sum of approximately $1.5 million. The contract between plaintiff and defendant contained an arbitration clause covering all claims, disputes and other matters arising out of the contract. When defendant bid upon and was awarded the contract, there was no structure already existing at the Duke Hospital North site.

The construction of the entire hospital was under the supervision and management of Turner Construction Company, the construction manager. The contract required defendant to perform its work to the entire satisfaction of both plaintiff and the construction manager.

Defendant was responsible solely for the stucco wall panel system and related lath and plastering work. Defendant exercised control over its own work, subject to the approval and supervision of the construction manager. Defendant exercised no control over the construction of the hospital as a whole nor over any other contractor other than subcontractors it used to complete its own portion of the contract.

It is a common construction industry practice throughout the nation and in Durham, North Carolina for the general contractor of a project to obtain all required building permits. The construction manager in this case procured the necessary building and construction permits. The contract also required that each trade contractor obtain all permits and licenses necessary for the completion of its work. Defendant was never licensed as a general contractor under G.S. 87-1, *et seq*.

Defendant performed work under the contract from 1976 to 1979. In 1979, defendant submitted a claim to plaintiff for additional compensation in the amount of $1 million. Following plaintiff's denial of defendant's claim, defendant filed a demand for arbitration, seeking damages in excess of $1.5 million.

On 13 March 1981, plaintiff filed a complaint and a motion for a stay of arbitration, contending that defendant was precluded from pursuing its arbitration claim under the contract since it was not licensed pursuant to G.S. 87-1, *et seq.*

On 3 April 1981, defendant filed a petition for removal to federal court and on 23 February 1982, the court issued an order staying federal court proceedings pending disposition of the matter in state court.

On 11 June 1982, the trial court denied plaintiff's motion for a stay of arbitration proceedings and ordered the parties to proceed to arbitration, finding that defendant was not a general contractor required to be licensed under G.S. 87-1. The court then stayed its order compelling arbitration pending final resolution on appeal.

*Powe, Porter and Alphin, by E. K. Powe and Patricia H. Wagner, for plaintiff-appellant.*

*Briggs and Morgan, by David B. Sand; and Stubbs, Cole, Breedlove, Prentis and Poe, by G. Jona Poe, Jr., for defendant-appellees.*

VAUGHN, Chief Judge.

This appeal presents the question of whether defendant, who was one of more than fifty parallel trade contractors contracting with plaintiff, and who constructed a portion of Duke Hospital North costing more than $30,000.00 was a general contractor under G.S. 87-1. Plaintiff contends that defendant was an unlicensed general contractor and, therefore, cannot enforce the arbitration clause in its contract with plaintiff. We affirm the order of the trial judge and hold that defendant was not a general contractor under G.S. 87-1.

Under G.S. 87-1, a general contractor is one who, "for a fixed price, commission, fee or wage, undertakes to bid upon or to con-

struct any building, highway, public utilities, grading or any improvement or structure where the cost of the undertaking is thirty thousand dollars ($30,000.00) or more . . ." Our holding turns on our construction of this statute. Although this case presents a novel situation involving parallel prime contractors, today is not the first time we have interpreted G.S. 87-1.

In finding that defendant is not a general contractor under G.S. 87-1, we adhere to precedent set in two prior Supreme Court cases. In *Builders Supply v. Midyette*, 274 N.C. 264, 162 S.E. 2d 507 (1968), the court explained that the purpose of G.S. 87-1 is to protect the public from incompetent builders. "When, in disregard of such a protective statute, an unlicensed person contracts with an owner *to erect a building* costing more than the minimum sum specified in the statute, he may not recover for the owner's breach of that contract." *Id.* at 270, 162 S.E. 2d at 511 (emphasis added). Pursuant to *Midyette*, protecting plaintiff from defendant's possible incompetency is not contemplated by the statute. Defendant did not contract with plaintiff to "erect a building," but rather, contracted to construct a relatively small portion of an extensive construction project.

In *Vogel v. Supply Co. and Supply Co. v. Developers, Inc.*, 277 N.C. 119, 177 S.E. 2d 273 (1970), the Supreme Court defined the words "building," "structure" and "improvement" in G.S. 87-1. "Building" and "structure," according to *Vogel*, are synonymous and "do not embrace parts or segments of a building or structure . . . Improvement . . . presupposes the prior existence of some structure to be improved." 277 N.C. at 132, 177 S.E. 2d at 281, 282. Defendant, in this case, did not undertake to build the hospital in its entirety, nor did it undertake to improve an already existing building.

Plaintiff urges us to construe G.S. 87-1 as applying to *any* construction contract for $30,000.00 or more. In light of *Midyette*, *Vogel* and several recent decisions of this court, we decline to do so. In *Helms v. Dawkins*, 32 N.C. App. 453, 456, 232 S.E. 2d 710, 712 (1972), we stated: "Not every person who undertakes to do construction work on a building is a general contractor, even though the cost of his undertaking exceeds $30,000.00 . . . . [T]he principal characteristic distinguishing a general contractor from a subcontractor or other party contracting with the owner with

respect to a portion of a project, or a mere employee, is the degree of control to be exercised by the contractor over the construction of the entire project." In *Roberts v. Heffner*, 51 N.C. App. 646, 277 S.E. 2d 446 (1981), we cited *Helms* for the general principal that a general contractor has control over a construction project. Even more recently, in *Phillips v. Parton*, 59 N.C. App. 179, 296 S.E. 2d 317 (1982), affirmed without opinion, 307 N.C. 694, 300 S.E. 2d 387 (1983), we reiterated the "control test." In all three cases cited we concluded that defendant, who had contracted to build a house for plaintiff, had control over the construction project and, therefore, should have been licensed under G.S. 87-1. Defendant's contract in this case, while it amounted to $1.5 million, was only about 2% of the total project cost of approximately $62 million. Defendant had control solely over construction of the stucco wall panel system and related lath and plastering work; it had no control over the work of other contractors nor over the construction project as a whole.

We do not find any conflict among prior decisions of this court. In *Fulton v. Rice*, 12 N.C. App. 669, 184 S.E. 2d 421 (1971), the contractor's original estimate was less than the statutory amount and the cost of the completed building was more. We concluded that the cost of the initial undertaking, not the cost of the completed building, determined whether the defendant was a general contractor. Nothing in the *Fulton* opinion contradicts the control test developed in later opinions. In *Hickory Furniture Mart v. Burns*, 31 N.C. App. 626, 230 S.E. 2d 609 (1976), we reversed summary judgment for plaintiff, finding a material issue of fact as to whether defendant was a general contractor. We cited *Fulton, supra,* for the proposition that the cost of the undertaking determines initially whether defendant falls under G.S. 87-1; however, we also cited *Vogel, supra,* for the proposition that the "fact that a subcontractor erects the walls and roof, puts in a subfloor, installs doors, windows, siding and shelves, and paints the building, does not make him a general contractor." 31 N.C. App. at 631, 230 S.E. 2d at 612. Although the defendant's undertaking in *Burns* was in excess of the statutory amount, we questioned whether defendant had the control of a general contractor. Similarly, while defendant's contract, in this case, was well in excess of the statutory amount, defendant did not have the requisite control.

Plaintiff urges this court to disregard the interpretation of G.S. 87-1 in *Vogel, supra,* as "obiter dictum" — words "entirely unnecessary for the decision of the case." Black's Law Dictionary, 5th Ed. In *Vogel,* a subcontractor sued to recover damages for breach of its contract. The Supreme Court analyzed and construed G.S. 87-1 to find that a subcontractor was not required to be licensed under the statute. The construction of G.S. 87-1 was central to the *Vogel* decision and cannot be disregarded as mere dicta.

"In construing statutes, . . . the rule is almost universal to adhere to the doctrine of stare decisis," *Hill v. R.R.,* 143 N.C. 406, 430, 55 S.E. 854, 866 (1906). We do not have the prerogative to do other than follow what we interpret as the meaning of the *Vogel* decision. *See, Insurance Co. v. Insurance Co.,* 9 N.C. App. 193, 175 S.E. 2d 741 (1970), *reversed,* 279 N.C. 240, 182 S.E. 2d 571 (1971).

Under the doctrine of stare decisis, we uphold the rule developed by this court that a general contractor is one with control over a construction project. *See, Phillips, supra; Roberts, supra; Burns, supra; Helms, supra.* The need for certainty and stability in the law requires that past decisions deliberately made after ample consideration not be disturbed except for the most cogent reasons. *Williams v. Hospital,* 237 N.C. 387, 391, 75 S.E. 2d 303, 305 (1953). Plaintiff, in this case, does not present cogent reasons for reversing settled law.

The consequences to plaintiff by allowing defendant to enforce the contract will not perpetuate palpable error. *See Watch Co. v. Brand Distributors and Watch Co. v. Motor Market,* 285 N.C. 467, 206 S.E. 2d 141 (1974). Plaintiff hired a construction manager to supervise the entire construction project. Defendant's work was subject to the approval of the construction manager, who had necessary building and construction permits. The supervision of the construction manager over each separate trade contractor was ample protection for plaintiff against the possible incompetency of any of its trade contractors. The consequence of allowing defendant to enforce the contract is that the parties will proceed to arbitration to settle their dispute. By allowing defendant to enforce the contract, we do not perceive any grievous harm to plaintiff mandating a change in existing law.

It is a recognized principle of statutory construction to construe a statute which carries with it criminal penalties in favor of the party against whom the statute is being applied. *See, Vogel, supra; see also State v. Mitchell,* 217 N.C. 244, 7 S.E. 2d 567 (1940). A violation of the licensing requirements in G.S. 87-1 subjects the violating party to criminal penalties under G.S. 87-13. Construing the statute and judicial interpretation pursuant thereto in the light most favorable to defendant, we find that defendant was not a general contractor within the meaning of G.S. 87-1. We, therefore, affirm the order of the trial court.

Affirmed.

Judges ARNOLD and PHILLIPS concur.