MILL-POWER SUPPLY COMPANY v. CVM ASSOCIATES, a NORTH CAROLINA GENERAL PARTNERSHIP, COMPOSED OF SAMUEL M. LONGIOTTI AND CHANDON INVESTMENT COMPANY, N.V., AS PARTNERS

No. 8610SC882

(Filed 5 May 1987)

**Contracts § 6.1— improvement to realty—licensing requirement—general contractor—genuine issue of material fact**

Plaintiff's erection of a space-frame and skylight assembly over the entrance to defendant's shopping mall constituted the construction of an "improvement" within the meaning of the general contractor licensing statute, N.C.G.S. § 87-1. However, a genuine issue of material fact existed as to whether plaintiff exercised such a degree of control over the entire mall renovation project as to make plaintiff a general contractor under N.C.G.S. § 87-1 and require that plaintiff be licensed in order to bring an action for breach of the construction contract.

APPEAL by plaintiff from *Farmer, Judge.* Judgment entered 3 June 1986 in Superior Court, WAKE County. Heard in the Court of Appeals 3 February 1987.

This is a civil action brought by plaintiff to enforce a lien against defendants' property for labor and materials furnished by plaintiff. Plaintiff claimed that defendants failed to pay plaintiff in full for building a roof above the entrance to Crabtree Valley Mall owned by defendants. After hearing arguments on defendants' motion for summary judgment, and reviewing the pleadings and affidavits for both parties, the trial court granted defendants' motion for summary judgment.

Plaintiff's complaint alleged that on or about 11 April 1984, plaintiff contracted with defendants to furnish materials and labor for a space-frame and skylight over the entrance to defendants' mall. Plaintiff further alleged that the parties agreed on a contract price of $205,000.00, and that $42,519.61 remains unpaid by defendants. Plaintiff filed a claim of lien pursuant to G.S. 44A-12 on 4 October 1985, and brought this action to enforce the lien pursuant to G.S. 44A-13 on 3 December 1985.

Plaintiff's salesman Maxie Funderburk said in an affidavit that he negotiated the construction contract with defendants' construction manager, Carl Duell. Mr. Funderburk stated that Mr. Duell "advised me that the installation of the space frame and skylight was one part of the complete renovation of the Crabtree Valley Mall"; that Clancy and Theys Construction Co. contracted with defendants to remove the old roof over the entranceway to the mall, and to construct new columns; and that Clancy and Theys did not work under the direction or supervision of, nor had a contract with, plaintiff. Mr. Funderburk listed several other "renovations" being performed by other contractors at the same time plaintiff was building the new roof. Mr. Funderburk stated further in his affidavit that defendants maintained a construction office on the job site from where Andy Dorton, who replaced Carl Duell as defendants' construction manager, "directed and coordinated the institution and completion of all the renovation projects, including plaintiff's only project for the improvement of the front entrance."

Included in the record on appeal as part of plaintiff's affidavits are five building permits and one building permit application

issued by the Permit Office Administrator for the City of Raleigh, North Carolina, to defendants. The permits were issued for "additions," "alterations," and "new construction" at Crabtree Valley Mall. On the application and all of the permits, the contractor was listed variously as "CVM Construction," "Crabtree Valley Mall," "Crabtree Valley Mall Const.," and "Crabtree Valley Mall Construction." Plaintiff's affiant, Charles A. Lysaght, owner of a structural engineering consulting firm in Raleigh, said that he reviewed the drawings for the skylight drafted by defendants' architect and concluded that the roof system was prefabricated and was installed independent of the main structure; that before the space-frame and skylight could be installed, the columns had to be constructed by Clancy and Theys Construction Co.; and that, in his opinion, the construction and installation of space-frames and skylights is not work performed by general contractors, and that the general contractor commonly obtains the building permit for a job site.

Defendants admitted that plaintiff furnished part of the labor and materials to build the space-frame and skylights, but alleged and defended that, because plaintiff was not licensed as a contractor pursuant to G.S. 87-1, and the cost of improving the structure exceeded $30,000.00, plaintiff is barred from recovering for an alleged breach of contract. Defendants' affiant, H. M. McCown, Secretary-Treasurer of the North Carolina State Licensing Board for General Contractors, said that plaintiff is not licensed as a general contractor under G.S. 87-1. Defendants' affiant Samuel M. Longiotti, a partner in defendant CVM Associates, stated that the cost of the construction and improvement exceeded $30,000.00; that defendants have paid $169,042.01 to plaintiff; that the construction for the roof was an improvement to the existing mall structure; and that all negotiations pursuant to the contract were directly between plaintiff's representatives and defendants.

Based on the pleadings and affidavits, the trial court granted summary judgment for defendants. Plaintiff appeals.

*Bode, Call & Green, by Howard S. Kohn and S. Todd Hemphill, for plaintiff appellant.*

*Moore, Ragsdale, Liggett, Ray & Foley, P.A., by Jane Flowers Finch and Albert D. Barnes, for defendant appellees.*

JOHNSON, Judge.

Plaintiff raises on appeal the issue of whether the trial court erred by finding from the forecast of the evidence presented that no genuine issue existed as to any material facts regarding plaintiff's status as a general contractor, and granting defendants a summary judgment based on that finding. The judge's role in ruling on a motion for summary judgment is to determine, based on the parties' pleadings and affidavits, whether any material issues of fact exist that require trial. If the only issues to be decided are issues of law, then summary judgment is proper. *Wachovia Mortgage Co. v. Autry-Barker-Spurrier Real Estate, Inc.*, 39 N.C. App. 1, 3-4, 249 S.E. 2d 727, 729 (1978), *aff'd*, 297 N.C. 696, 256 S.E. 2d 688 (1979). The burden is on the movant to show the lack of any triable issue of fact. *North Carolina National Bank v. Gillespie*, 291 N.C. 303, 230 S.E. 2d 375 (1976). We find that the trial court improperly granted summary judgment in defendants' favor.

I.

In North Carolina, a person who contracts to construct a building or structure costing $30,000.00 or more, pursuant to Chapter 87 of the General Statutes, must be licensed to recover from the owner for breach of contract or on the theory of *quantum meruit. Bryan Builders Supply v. Midyette*, 274 N.C. 264, 270, 162 S.E. 2d 507, 510-11 (1968); *Spears v. Walker*, 75 N.C. App. 169, 171, 330 S.E. 2d 38, 40 (1985). A general contractor is defined in G.S. 87-1 as:

> [A]ny person . . . who for a fixed price, commission, fee or wage, undertakes to bid upon or to construct or who undertakes to superintend or manage, on his own behalf or for any person . . . that is not licensed as a general contractor pursuant to this Article, the construction of any building . . . improvement or structure where the cost of the undertaking is thirty thousand dollars ($30,000) or more, shall be deemed to be a 'general contractor' engaged in the business of general contracting in the State of North Carolina.

The North Carolina Supreme Court has distinguished between general contractors and subcontractors for purposes of licensure under G.S. 87-1, holding that persons found to be subcontractors are not required to be licensed, and may sue the gen-

eral contractor for breach of contract. *Vogel v. Reed Supply Co.*, 277 N.C. 119, 133, 177 S.E. 2d 273, 282 (1970). The Court in *Vogel, supra,* reasoned that the purpose of licensing — to protect the public from incompetent builders — is not involved where the general contractor stands between the subcontractor and the owner. If the owner is damaged, his remedy is against the general contractor. *Id.* The public is protected by testing the competence of the general contractor through licensing.

Plaintiff in the case *sub judice* alleges that it is at most a subcontractor, and should be allowed to maintain claims for breach of contract or for reasonable services on *quantum meruit* against defendant-owners for alleged underpayments. Defendants argue that plaintiff is a general contractor, was not licensed under G.S. 87-1, and is therefore barred from bringing this action. We must look to the case law interpreting G.S. 87-1 to see whether, on the facts in the case *sub judice,* plaintiff is a general contractor.

## II.

### A.

The parties orally agreed that plaintiff would construct a new roof over the entrance to defendants' Crabtree Valley Mall. The record shows that other construction projects by other construction companies were underway at the mall during the same time. The old roof was removed by Clancy and Theys Construction Co., and plaintiff was to furnish labor and materials to construct the new one. The new roof is made of a space-frame and skylight assembled and erected by plaintiff atop eight reconstructed columns. Clancy and Theys Construction Co. reconstructed the columns. Plaintiff's salesman, Maxie Funderburk, said in an affidavit that Clancy and Theys Construction Co. did not work under plaintiff's direction, and that no contractual relationship existed between the two companies.

Defendants answered and defended that they have paid plaintiff $169,042.01 on the contract, and that the new roof was poorly and incompletely constructed. At no time during construction of the new roof was plaintiff licensed under Chapter 87 as a general contractor.

### B.

We must first decide whether plaintiff constructed an "improvement" under G.S. 87-1. The Court in *Vogel, supra,* held as a subcontractor a company that contracted to furnish and erect walls, subfloors, windows, doors, roofing materials, and to complete painting in the construction of a one hundred sixty-eight unit apartment complex. In reasoning that these activities did not constitute construction of an *improvement* under G.S. 87-1, the Court stated:

> Where the Legislature defines a word used in a statute, that definition is controlling even though the meaning may be contrary to its ordinary and accepted definition. Words and phrases of a statute 'must be construed as a part of the composite whole and accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit.'

*Vogel, supra,* at 130-31, 172 S.E. 2d at 280 (citations omitted). The Court further stated:

> The term 'improvement' does not have a definite and fixed meaning. . . . As used here it connotes the performance of construction work and presupposes the prior existence of some structure to be improved. . . . There was no existing building or structure to be improved, and in our view the term 'improvement' as used in G.S. 87-1 has no application to the facts in this case.

*Id.* at 132-33, 177 S.E. 2d at 281-82 (citations omitted).

The facts in the case *sub judice* differ significantly from the facts in *Vogel, supra.* The subcontractor in *Vogel* constructed parts of apartment buildings then under construction. Plaintiff in this case put up a new roof over the entrance to an existing building. Construction such as in the case *sub judice* presupposes the prior existence of some structure to be improved, namely, the Crabtree Valley Mall. Plaintiff does not contend in its complaint or affidavits that the mall was not complete when it began working on the new roof. As this Court stated in *Reliable Properties, Inc. v. McAllister,* 77 N.C. App. 783, 786, 336 S.E. 2d 108, 110 (1985) (contractor who renovated apartments held to be a general contractor), *cert. denied,* 316 N.C. 379, 242 S.E. 2d 897 (1986),

"[c]learly, the renovation improved already existing buildings and constituted construction within the meaning of the statute." We find that plaintiff undertook to construct an "improvement" under G.S. 87-1 by adding a roof over an existing structure.

## C.

If deciding that plaintiff constructed an improvement were all that was necessary to establish plaintiff's status as a general contractor, we could stop here. However, case law requires that we go a step further and determine the extent of plaintiff's control over the entire project. As this Court noted in *Helms v. Dawkins*, 32 N.C. App. 453, 456, 232 S.E. 2d 710, 712 (1977) (citations omitted), *overruled on other grounds, Sample Const. Co. v. Morgan*, 311 N.C. 717, 722-23, 319 S.E. 2d 607, 611 (1984):

> Not every person who undertakes to do construction work on a building is a general contractor, even though the cost of his undertaking exceeds $30,000.00. . . . [T]he principal characteristic distinguishing a general contractor from a subcontractor or other party contracting with the owner with respect to a portion of the project, or a mere employee, is the degree of control to be exercised by the contractor over the construction of the entire project. Ordinarily the degree of control a contractor has over the construction of a particular project is to be determined from the terms of the contract.

Under the *Helms* "control test," we ordinarily look to the terms of the contract to determine the degree of control exercised by a particular contractor over the entire project. Since in the case before us there is no evidence of a written contract between Mill-Power and CVM, we must look to the record for other evidence regarding contract terms.

Plaintiff's complaint alleges that on or about 11 April 1984, it contracted with defendants to furnish labor and materials for the construction and erection of a space-frame and skylight assembly above the entrance to defendants' mall. Defendants' answer admits that plaintiff furnished part of the labor and materials necessary to erect the space-frame and skylight assembly for the main entrance above the mall. The affidavit of CVM Associates' partner, Samuel Longiotti, addresses negotiations between the parties regarding construction of the new roof over the entrance

to the mall, and admits that plaintiff did undertake to construct such a roof. Nowhere in the record is there evidence that plaintiff was involved in any other work during the renovation of defendants' mall.

We find that the forecast of the evidence is at least sufficient to raise a genuine issue of material fact as to whether plaintiff exercised control over the entire renovation project. Under the terms of the contract as they exist in the record, the evidence tends to show that plaintiff and defendants agreed that plaintiff would construct and erect a space-frame and skylight assembly over the entrance to defendants' mall. Plaintiff did not contract to do construction anywhere else in defendants' mall, and was not shown to have had the opportunity to exercise control over the other contractors renovating the mall. Plaintiff's salesman, in his affidavit, stated that plaintiff did not supervise the work of Clancy and Theys Construction Co. which built the columns upon which plaintiff secured the roof assembly. Defendants do not show in the record that plaintiff exercised control over Clancy and Theys Construction Co. or any other contractor at the job site. In fact, plaintiff's salesman said that defendants' employee directed and coordinated the entire renovation project, which tends to show that defendant CVM and not plaintiff exercised control over the entire project. We find that, although plaintiff constructed an improvement under G.S. 87-1, a genuine issue of material fact exists as to whether, following the *Helms* "control test," plaintiff exercised such a degree of control over the entire renovation project as to make plaintiff a general contractor under G.S. 87-1, requiring plaintiff to be licensed in order to bring an action for breach of contract. We hold, therefore, that the trial court erred by granting summary judgment as a matter of law for defendants. The judgment appealed from is

Reversed.

Judges BECTON and PHILLIPS concur.