BAKER CONSTRUCTION COMPANY, INC. v. WESLEY F. PHILLIPS AND DARLENE PHILLIPS

No. 273PA91

(Filed 12 March 1993)

**Contractors § 7 (NCI4th)— licensing—general contractor—license not classified for all work—subcontractors properly classified—general contractor not barred from recovery**

The trial court erred by granting summary judgment for defendants in an action by a general contractor to collect money due under a construction contract where defendants contended that plaintiff was barred from recovery because its general contractor's license was classified for public utilities and not for highway construction, which plaintiff had subcontracted to general contractors holding licenses classified for highway construction. Nothing in N.C.G.S. § 87-10 requires the general contractor personally to perform all construction work called for by the contract, nor does this section require the general contractor's license to be classified in all types of work called for by a contract. It permits a general contractor to do all the construction work when its license classifications cover each type of work required by the contract, and it also permits a general contractor to play a supervisory role, hiring subcontractors whose licenses are classified for the work in question.

**Am Jur 2d, Building and Construction Contracts § 8.**

**Who is a "contractor" within statutes requiring the licensing of, or imposing a license tax upon, a "contractor" without specifying the kinds of contractors involved. 19 ALR3d 1407.**

Justice PARKER did not participate in the consideration or decision of this case.

On plaintiff's petition for discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals in an unpublished opinion, *Baker Constr. Co., Inc. v. Phillips*, 102 N.C. App. 822, 404 S.E.2d 369 (1991), pursuant to Rule 30(e), affirming an order entered by Rousseau, J., at the 25 June 1989 Session of Civil Superior Court, Forsyth County. Heard in the Supreme Court 14 February 1992.

BAKER CONSTRUCTION CO. v. PHILLIPS

[333 N.C. 441 (1993)]

*Moore & Brown, by B. Ervin Brown, II, David B. Puryear, Jr., and R.J. Lingle, for plaintiff-appellant.*

*Thomas & Bennett, by Raymond D. Thomas, for defendant-appellees.*

*Johnston, Taylor, Allison & Hord, by James W. Allison and Greg C. Ahlum, for Carolinas AGC, Inc., amicus curiae.*

EXUM, Chief Justice.

Plaintiff contractor seeks to recover money allegedly due under a construction contract between plaintiff and defendants, owners of a residential subdivision, for certain street and utility improvements to defendants' property. Plaintiff claims to have completed the work properly and that defendants owe it $13,501.98. Defendants answered, denying the complaint's material allegations.

Defendants subsequently moved for summary judgment on the sole ground that plaintiff was not licensed to enter into the contract. At the hearing on the motion the forecast of evidence showed that plaintiff held a general contractor's license unlimited[1] as to amount but which classified it as a public utilities contractor. The contract provided for grading and paving of streets and for the installation of under-street water and sewer lines and sewer outfall lines. Plaintiff itself performed the utilities portion of the contract and subcontracted the grading and paving to general contractors who held licenses classified for highway construction.

Defendants contend that because plaintiff's general contractor's license was classified for public utilities and not for highway construction and because the contract called for grading and paving to be done, plaintiff was not licensed to enter into the contract or to perform the work through subcontractors whose licenses were classified for the work; therefore, as an unlicensed general contractor plaintiff is barred from recovery on the contract.

---

1. An "unlimited" license means that it is not limited as to the "value" of the project in question. N.C.G.S. § 87-10 provides for three categories of licenses based on the project's "value." At the time of the contract this statute provided: "The holder of an unlimited license shall be entitled to act as general contractor without restriction as to value of any single project; the holder of an intermediate license shall be entitled to act as general contractor for any single project with a value of up to five hundred thousand dollars ($500,000); the holder of a limited license shall be entitled to act as general contractor for any single project with a value of up to one hundred seventy five thousand dollars ($175,000). . . ." The limited license amount was increased to $250,000 in 1989. N.C.G.S. § 87-10 (1989).

## BAKER CONSTRUCTION CO. v. PHILLIPS

[333 N.C. 441 (1993)]

The trial court agreed with defendants' contention and allowed defendants' motion for summary judgment. The Court of Appeals likewise agreed and affirmed. We think the lower courts misconstrued the controlling statutes and that under these statutes plaintiff was a duly licensed general contractor authorized to enter into the contract. Because plaintiff subcontracted the highway work to general contractors with licenses classified for highway construction, the fact that plaintiff itself did not hold a license so classified is no bar to recovery for the work performed. We, therefore, reverse.

The forecast of evidence at the hearing on defendants' summary judgment motion showed as follows:

Plaintiff and defendants entered into a contract on 10 April 1988 under which plaintiff was to make certain street and utility improvements to defendants' single-family residential subdivision in High Point. The contract was divided into four parts: section A, grading — $15,686.50; section B, utilities (streets) — $39,800.75; section C, utilities (outfall) — $22,247.00; and section D, paving — $19,962.25.

Plaintiff held an unlimited general contractor's license issued by the North Carolina Licensing Board of General Contractors pursuant to N.C.G.S. § 87-10 (1985) classifying it as a public utilities contractor. Plaintiff subcontracted with others to do the grading and paving portions of the contract. The grading subcontractor, Smith and Jennings, Inc., held "Grading and Excavation, Water & Sewer" license #4995. The paving subcontractor, Thompson-Arthur Paving, held "Unclassified" license #12459.[2] The work was completed in a workmanlike manner.[3]

The trial court, granting defendants' motion for summary judgment, concluded that since plaintiff "did not possess a license

---

2. The "Unclassified" license classification includes "Building," "Residential," "Highway," "Public Utilities," and "Specialty" classifications. North Carolina Licensing Board for General Contractors, *Laws and Regulations Applicable to General Contracting in the State of North Carolina*, p. 2 (1990).

Defendants contend that there was no evidentiary showing before the trial court that Thompson-Arthur Paving was licensed. According to the discovery materials before the Court, however, specifically the plaintiff's answers to defendants' interrogatories, Thompson-Arthur Paving was licensed as stated in the text.

3. A dispute did arise between the parties as to whether plaintiff completed the work according to the contract schedule, but this is immaterial as the case is presented to us.

with the classification to construct and/or supervise the construction of public streets," plaintiff was not entitled to recover on its contract with defendants.

The Court of Appeals affirmed, holding that in order to recover on its contract with defendants, plaintiff was required by N.C.G.S. § 87-1 "to have a general contractor[']s license with *both* a public utilities classification and a highway contracting classification." *Baker Constr. Co., Inc. v. Phillips*, 102 N.C. App. 822, 404 S.E.2d 369 (1991).

Article I of Chapter 87, "An Act to Regulate the Practice of General Contracting," (the Act) controls this lawsuit. At the time the parties executed their contract, the Act defined a "general contractor" as follows:

> For the purpose of this Article any person or firm or corporation who for a fixed price, commission, fee or wage, undertakes to bid upon or to construct or who undertakes to superintend or manage, on his own behalf or for any person, firm or corporation that is not licensed as a general contractor pursuant to this Article, the construction of any building, highway, public utilities, grading or any improvement or structure where the cost of the undertaking is thirty thousand dollars ($30,000) or more shall be deemed to be a "general contractor" engaged in the business of general contracting in the State of North Carolina.

N.C.G.S. § 87-1 (1985).[4]

Plaintiff concedes that in bidding on and contracting for the job it was acting as a general contractor under section 87-1 of the Act and required to be licensed as such. Plaintiff agrees that a general contractor who enters a construction contract without a valid license may not recover on the contract, *Brady v. Fulghum*, 309 N.C. 580, 308 S.E.2d 327 (1983), and, if the license expires and becomes invalid during the period of construction, the general contractor is not entitled to recover for work done while it was unlicensed, *Hall v. Simmons*, 329 N.C. 779, 407 S.E.2d 816 (1991).

---

4. This section was amended in 1989 to increase the monetary amount from $30,000 to $45,000. The 1989 amendments also added a provision relating to the erection of manufactured modular buildings.

BAKER CONSTRUCTION CO. v. PHILLIPS

[333 N.C. 441 (1993)]

The issue which divides the parties is whether plaintiff was licensed as a general contractor when it entered into and performed the contract.

Section 87-10 of the Act, in addition to providing for the three categories of limitation based on the value of the project and for the various license classifications — building, residential, highway, public utilities, and specialty — sets out the prerequisites for obtaining a license as a general contractor. The 1985 version of this section provided:

> Before being entitled to an examination an applicant must show to the satisfaction of the Board . . . that the applicant is possessed of a good character and is otherwise qualified as to competency, ability, integrity,[5] and that the applicant has not committed . . . any act, which . . . would be grounds . . . for the suspension or revocation of contractor's license, or . . . done any act involving dishonesty, fraud, or deceit, or . . . been refused a license as a general contractor nor had such license revoked, . . . for reasons that should preclude the granting of the license applied for, and . . . has never been convicted of a felony involving moral turpitude, relating to building or contracting, or involving embezzlement or misappropriation of funds or property entrusted to the applicant. . . .
>
> The Board shall conduct an examination . . . of all applicants for license to ascertain the ability of the applicant to make a practical application of his knowledge of the profession of contracting, under the classification contained in the application, and to ascertain the qualifications of the applicant in reading plans and specifications, knowledge of estimating costs, construction, ethics and other similar matters pertaining to the contracting business and knowledge of the applicant as to the responsibilities of a contractor to the public and of the requirements of the laws of the State of North Carolina relating to contractors, construction and liens. If the results of the examination of the applicant shall be satisfactory to the Board, then the Board shall issue to the applicant a certificate to engage as a general contractor in the State of North Carolina, as provided in said certificate, which may be

---

5. The 1989 amendments to this section added at this point in the section the words, "and financial responsibility." N.C.G.S. § 87-10 (1989).

limited into five classifications as the common use of the terms are known . . . .

Section 87-1 of the Act, which defines the term "general contractor," considered together with section 87-10, quoted immediately above, demonstrates that the legislature thought of general contractors as being engaged in the common calling of bidding on, contracting for, and constructing the listed improvements to real property, which calling the legislature referred to as the "contracting business." These sections also demonstrate that the legislature intended that all those so engaged should meet certain basic prerequisites common to general contracting before being licensed, whatever limitations or classifications were finally placed on the license. These prerequisites, set out in section 87-10, relate to the license applicants' character and integrity, past conduct, criminal record, and knowledge of certain basic skills common to the construction trade. Having met these prerequisites in the manner prescribed by section 87-10, the applicant is entitled to be licensed as a general contractor. Once licensed, the general contractor is entitled, pursuant to section 87-1, to "bid upon . . . construct . . . superintend or manage, on his own behalf or for" others various kinds of construction.

We think it clear from the plain language of these sections of the Act that the legislature intended for a general contractor, having met the prerequisites for and been licensed as such, to be able to bid on and contract for any kind of construction project which involves the listed improvements to real property, notwithstanding its license classification.

The question then is how may the licensed general contractor go about completing the job once its bid has been accepted and the contract executed. This is controlled again by N.C.G.S. §§ 87-1 and 87-10, read together, and considered with a view toward the Act's purpose. "Words and phrases of a statute 'must be construed as a part of a composite whole and accorded only that meaning which other modifying provisions and the clear intent and purposes of the act will permit.' " *Vogel v. Supply Co. and Supply Co. v. Developers, Inc.*, 277 N.C. 119, 131, 177 S.E.2d 273, 280 (1970) (quoting 7 Strong's North Carolina Index 2d, *Statutes* § 5 (1968) ). "The purpose of Article 1 of Chapter 87 of the General Statutes . . . is to protect the public from incompetent builders." *Vogel v. Supply Co. and Supply Co. v. Developers, Inc.*, 277 N.C. at 130, 177 S.E.2d

at 280 (quoting *Builders Supply v. Midyette*, 274 N.C. 264, 270, 162 S.E.2d 507, 510-11 (1968)). More specifically, its purpose is "to guarantee 'skill, training and ability to accomplish such construction in a safe and workmanlike fashion.'" *Brady v. Fulghum*, 309 N.C. 580, 584, 308 S.E.2d 327, 330 (quoting *Arnold Construction Company v. Arizona Board of Regents*, 109 Ariz. 495, 498, 512 P.2d 1229, 1232 (1973)).

Given these purposes of the Act and the language of the particular sections involved, we think the legislature intended as follows: If the project is one on which only a licensed contractor is authorized to contract, then any work on particular parts of the project which fall within one of the classifications listed in section 87-10 must be either supervised or performed by a contractor whose license is classified accordingly. This is what the words "undertakes to bid upon or to construct or who *undertakes to superintend or manage* . . . for any person, firm or corporation that is not licensed as a general contractor . . . the construction of . . . any building, . . . etc." plainly mean. (Emphasis supplied.)

Nothing in this section requires the general contractor personally to perform all the construction work called for by the contract, nor does this section require the general contractor's license to be classified in all types of work called for by a contract. It *permits* a general contractor to do all the construction work himself when his license classifications cover each type of work required by the contract. It also permits a general contractor to play a supervisory role, hiring subcontractors whose licenses are classified for the work in question to perform work for which the general contractor's license is not classified.

Indeed, we are satisfied that the language in section 87-1, "who undertakes to superintend or manage, on his own behalf or for any person, firm or corporation that is not licensed as a general contractor," was added for the purpose of permitting a licensed general contractor to perform the work through unlicensed subcontractors provided the general contractor's license is classified for the work to be done. It follows that if the general contractor's license is not so classified, it can perform the work through a subcontractor whose license is classified for the work. In either case the purpose of the Act, to protect the public from incompetent and unskilled work, is fully met.

This interpretation of the Act is not in conflict with *Vogel v. Supply Co. and Supply Co. v. Developers, Inc.*, 277 N.C. 119, 177 S.E.2d 273. There is language in *Vogel* to the effect that the legislature did not intend the Act to require the licensing of subcontractors. The *Vogel* Court, however, interpreted the facts to mean that the subcontractor in that case, essentially a supplier of labor and materials for "integral parts" of a building, was not, because of the type of work being done, within the definition of a general contractor in section 87-1. A license was therefore not required of either a general contractor or a subcontractor to perform the work in question. The rule in *Vogel*, that a subcontractor need not be licensed, is limited to the facts of that case. It would continue to apply only where the work in question is not the type of work referred to in section 87-1.

When, as here, subcontractors in fact hold licenses as general contractors classified in areas appropriate to the work they are doing, the purposes of Article 1 of Chapter 87 — "to guarantee 'skill, training and ability to accomplish such construction in a safe and workmanlike fashion,' " *Brady v. Fulghum*, 309 N.C. at 584, 308 S.E.2d at 330 — are amply served, and the letter as well as the spirit of the law is satisfied.

We hold a general contractor whose license is not classified for all work to be performed under the contract is not acting in violation of Article I, Chapter 87, when, as here, he subcontracts work for which his license is not classified to a contractor holding a general contractor's license that is so classified. Since plaintiff's forecast of the evidence shows such facts, summary judgment should not have been entered for defendants on the ground asserted. The decision of the Court of Appeals affirming the summary judgment is, therefore,

Reversed.

Justice Parker did not participate in the consideration or decision of this case.