FLORENCE CONCRETE PRODUCTS, INC., Petitioner v. NORTH CAROLINA LICENSING BOARD FOR GENERAL CONTRACTORS, Respondent

No. 9210SC462

(Filed 4 January 1994)

**Contractors § 4 (NCI4th)— manufacturer of prestressed concrete bridge components—general contractor's license required**

Plaintiff was required to possess a general contractor's license when performing DOT bridge construction projects if the cost of the undertaking exceeded the statutory minimum, since the work performed by plaintiff, manufacturing and installing prestressed concrete components for highway bridges, constituted an improvement to a highway which was the type of work referred to in N.C.G.S. § 87-1 requiring a general contractor's license.

**Am Jur 2d, Building and Construction Contracts § 131.**

Appeal by respondent from judgment entered 2 January 1992 by Judge Henry V. Barnette, Jr. in Wake County Superior Court. Heard in the Court of Appeals 14 April 1993.

*Jordan, Price, Wall, Gray & Jones, by Henry W. Jones, Jr. and Jeffrey S. Whicker, for petitioner-appellee.*

*Bailey & Dixon, by Carson Carmichael, III, for respondent-appellant.*

JOHN, Judge.

Respondent (the Licensing Board) appeals from the trial court's order holding petitioner (Florence Concrete) did not meet the definition of "general contractor" under N.C.G.S. § 87-1 (1989) (amended 1992) and therefore was not required to obtain a North Carolina general contractor's license in order to bid and perform bridge construction projects. The Licensing Board contends the trial court erred because Florence Concrete qualifies as a general contractor within the purview of the statute. We find this argument persuasive and reverse the trial court.

Florence Concrete, a South Carolina corporation engaged in the manufacture and installation of prestressed concrete components for highway bridges, bids on North Carolina Department of Transportation (DOT) construction projects. If successful in its bid, it thereafter manufactures the necessary components and then transports and installs the finished components. More than 200 North Carolina bridges have been built using Florence Concrete's prestressed components.

The bidding procedure begins when DOT issues invitations for bids on a particular project. Upon receipt of proposals from Florence Concrete and other competitors, DOT awards the contract to the lowest responsible bidder. The Department of Administration (DOA) administers all purchase orders concerning these matters. Florence Concrete's method of performing these contracts has not changed over the years and is not anticipated to differ in the future. Upon receiving the requisite purchase order from DOA, Florence Concrete begins fabrication; a DOT inspector supervises the manufacturing process. After final DOT inspection and approval, the completed components are stored in South Carolina until the North Carolina Division of Bridge Maintenance (DOM) requests delivery. Prior to delivery, DOM installs all the necessary bridge pilings and otherwise prepares the location for the prestressed concrete components. Upon reaching the project site, Florence Concrete installs the components under DOM's supervision. DOM labor crews thereafter complete bridge construction. An entire project will customarily require from 7 to 10 days for completion; Florence Concrete's portion of the project generally consists of approximately 6 to 8 hours.

In February 1991, the DOA made inquiry to the Licensing Board, questioning whether Florence Concrete must be a licensed

general contractor in order to perform the bridge construction activities described above. Mark Selph, Secretary of the Board, replied licensure would be required under N.C.G.S. § 87-1 for projects costing $45,000 or more. On this basis, several of petitioner's bids for contracts were disqualified. In order to continue to bid on bridge projects, Florence Concrete obtained the requisite general contractor's license; however, this action was taken "under protest" because of the increased liability and insurance costs involved with being a general contractor.

On 9 April 1991, Florence Concrete filed a petition with respondent Licensing Board requesting a declaratory ruling. Florence Concrete sought a decision stating it is not required to maintain a general contractor's license for bidding on and performing DOT projects. Respondent Licensing Board failed to issue a ruling within 60 days; under then-existing N.C.G.S. § 150B-17 (1987) (recodified at G.S. § 150B-4 (1991)), this was tantamount to a denial of the request on its merits. Florence Concrete appealed to Wake County superior court which, after making detailed findings of fact and conclusions of law, reversed the "decision" of the Licensing Board.

---

Initially, we observe this case involves the appeal of an agency decision to the trial court and subsequent appeal to this Court. Our Administrative Procedure Act (APA), N.C.G.S. §§ 150B-1 to -52 (1991), details the appropriate procedures which must be followed in such instances. The requisite review standards which must be applied by: (1) the superior court in considering an initial appeal, and (2) this Court upon a subsequent appeal, have been fully explored in our decisional law. *See In re Appeal by McCrary*, 112 N.C. App. 161, 164-165, 435 S.E.2d 359, 362-63 (1993); *Sherrod v. N.C. Dep't of Human Resources*, 105 N.C. App. 526, 530, 414 S.E.2d 50, 53 (1992). In the interest of judicial economy, we decline to elaborate further upon these standards.

In the case *sub judice*, the controversy centers upon interpretation and application of the term "general contractor" as used in N.C.G.S. § 87-1. Florence Concrete argues it does not operate as a general contractor in fulfilling bridge building contracts with DOT, and therefore it should not be obliged to be licensed as such.

Misinterpretation of a statutory term by an agency constitutes an error of law necessitating *de novo* review by the court. *McCrary*, 112 N.C. App. at 166, 435 S.E.2d at 363. In conducting such review,

the court may freely substitute its own judgment for that of the agency. *Brooks v. Rebarco, Inc.*, 91 N.C. App. 459, 463, 372 S.E.2d 342, 344 (1988). Furthermore, where, as in the case *sub judice*, the trial court was required to utilize *de novo* review, this Court will directly review the agency's decision under a *de novo* review standard. *Id.* at 464, 372 S.E.2d at 345.

While the trial court decided this case by application of then-existing N.C.G.S. § 87-1 (1989) (amended 1992), we observe Florence Concrete has sought a prospective ruling regarding license requirements for future contracts. Under these circumstances we shall apply present N.C.G.S. § 87-1 (Supp. 1992) in formulating our decision. However, for purposes of this appeal there is little difference in the relevant portion of the two versions of G.S. § 87-1; only the cost of the undertaking was changed.

In pertinent part, G.S. § 87-1 currently defines a general contractor as:

> [A]ny person or firm or corporation who . . . undertakes to bid upon or to construct or who undertakes to superintend or manage . . . the construction of any building, highway, public utilities, grading, or any improvement or structure where the cost of the undertaking is thirty thousand dollars ($30,000) or more . . . .

Licensure is required for any entity meeting this statutory definition. *See Baker Construction Co. v. Phillips*, 333 N.C. 441, 448, 426 S.E.2d 679, 683 (1993). Accordingly, the common law definition of "general contractor" is irrelevant in deciding the question of whether a license is required; our ruling must turn on the meaning of the specific words contained in the statute. *Vogel v. Reed Supply Co.*, 277 N.C. 119, 131, 177 S.E.2d 273, 281 (1970). Licensing is required in order to guarantee skill and to protect the public from incompetent builders. *Baker Construction*, 333 N.C. at 446-47, 426 S.E.2d at 683. It is undeniable that the risk to the public from improper construction of highway bridges is high.

In its judgment pronouncing a license not required, the trial court reasoned Florence Concrete did not exercise control over the bridge construction project and therefore was not a general contractor, but rather a *subcontractor* or a *parallel prime contractor*. This analysis finds support in cases such as *Mill-Power Supply Co. v. CVM Assocs.*, 85 N.C. App. 455, 355 S.E.2d 245 (1987) and

*Duke University v. American Arbitration Ass'n*, 64 N.C. App. 75, 306 S.E.2d 584, *disc. review denied*, 309 N.C. 819, 310 S.E.2d 349 (1983).

However, since the trial court rendered its judgment, our Supreme Court issued its opinion in *Baker Construction Co. v. Phillips*, 333 N.C. 441, 426 S.E.2d 679 (1993). Under *Baker Construction*, even a subcontractor must be licensed if its contracted work is "the type of work referred to in section 87-1." *Id.* at 448, 426 S.E.2d at 683; *see also Spivey and Self, Inc. v. Highview Farms, Inc.*, 110 N.C. App. 719, 431 S.E.2d 535, *disc. review denied*, 334 N.C. 623, 435 S.E.2d 342 (1993). The statute refers to the "construction of any building, highway, public utilities, grading, or any improvement or structure where the cost of the undertaking is thirty thousand dollars ($30,000) or more . . . ."

In the case *sub judice*, the work performed by Florence Concrete involved the manufacture of prestressed concrete components for highway bridges. This constitutes an *improvement* to a *highway* and is thus the type of work referred to in G.S. § 87-1. Furthermore, all Florence Concrete's contracted work appears to exceed the statutory $30,000 limit. Under these circumstances, we hold Florence Concrete is required to possess a general contractor's license when performing DOT bridge construction projects if the cost of the undertaking exceeds the statutory minimum. *See Baker Construction*, 333 N.C. at 447-48, 426 S.E.2d at 683; *Spivey and Self*, 110 N.C. App. at 725-26, 431 S.E.2d at 538-39.

Reversed.

Judges EAGLES and MARTIN concur.