**Dean Russell CARRICO, an individual; DRC Services, Inc., a corporation; Bears, Inc., a corporation; and Real Estate and Rentals, Inc., a corporation, Plaintiffs,**

v.

**VILLAGE OF SUGAR MOUNTAIN; Jack Anderson, individually and as Councilman for the Village of Sugar Mountain; and Carlene Hall, individually and as Town Manager and Zoning Administrator for the Village of Sugar Mountain, Defendants.**

**No. CIV.1:99CV168.**

United States District Court, W.D. North Carolina, Asheville Division.

May 22, 2000.

---

Robin Tatum Morris, Michelle L. Frazier, Poyner & Spruill, Raleigh, NC, for Plaintiffs.

Dean Russell Carrico, Kill Devil Hills, NC, pro se.

William A. Blancato, McCall, Doughton & Blancato, Winston–Salem, NC, for Village of Sugar Mountain.

Stephen M. Thomas, Patrick, Harper & Dixon, Hickory, NC, for Jack Anderson.

Frank A. Contrivo, Asheville, NC, for Carlene Hall.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

THIS MATTER is before the Court on the Plaintiffs' timely filed objections to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Pursuant to standing orders of designation and 28 U.S.C. § 636, the undersigned referred the Defendants' motions for summary judgment to the Magistrate Judge for a recommendation as to disposition. Having conducted a *de novo* review to those portions of the recommendation to which specific objections were filed, the undersigned concludes that summary judgment should be granted. 28 U.S.C. § 636(b); Fed.R.Civ.P. 72. The Defendants have also moved for sanctions.

### I. PROCEDURAL HISTORY

On August 16, 1999, a complaint was filed on Plaintiffs' behalf by attorneys at Poyner & Spruill in Raleigh, North Carolina. The complaint alleged causes of action pursuant 42 U.S.C. § 1983 for violations of their rights to do business and to own property, of due process and equal protection, state constitutional claims, a claim of the arbitrary exercise of police power, tortious interference with contract, intentional interference with business opportunities, abuse of process, intentional infliction of emotional distress, and unfair and deceptive trade practices. The Defendants answered and in December 1999, Plaintiffs' attorneys were allowed to withdraw from representation. Plaintiff Carrico has proceeded in a *pro se* capacity since

that time. The corporate Plaintiffs were warned by court order in January 2000 that they could not proceed *pro se* in the action. No attorney has appeared for any Plaintiff. "It has been the law for the better part of two centuries that a corporation may appear in federal courts only through licensed counsel." *Rowland v. California Men's Colony,* 506 U.S. 194, 202, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993). Thus, on this ground alone, the corporate Plaintiffs' claims must be dismissed.

### II. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue exists if a reasonable jury considering the evidence could return a verdict for the nonmoving parties, here the Plaintiffs. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the Defendants as the moving parties have the initial burden to show a lack of evidence to support Plaintiffs' case. *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If this showing is made, the burden then shifts to the Plaintiffs who must convince the Court that a triable issue does exist. *Id.* Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [Plaintiffs]." *Id.* A "mere scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* Moreover, in considering the facts for the purposes of this motion, the Court will view the pleadings and material presented in the light most favorable to the Plaintiffs, as the nonmoving parties. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### III. STATEMENT OF FACTS

In June 1997, Plaintiff DRC Services, Inc. (DRC) contracted with Selim Habib

Youness and Stella Habib to construct a condominium in Sugar Mountain, North Carolina, for a price of $254,800. Exhibit 2, Consent Order of Hon. Donald Stephens, Superior Court Judge, Wake County, North Carolina, filed December 21, 1999, *attached to* Affidavit of William A. Blancato, filed February 17, 2000, at 2. Plaintiff Carrico is the president of DRC which is in the business of building construction. Complaint, filed August 16, 1999, at 2. In October 1997, DRC contracted with Dr. Albert Gersing to construct four condominiums for a price of $900,000. Consent Order, *supra.* DRC was not at the time of the contracts and has never been the holder of a valid general contractor's license or certificate of renewal of license to practice general contracting in North Carolina. *Id.* Plaintiff Carrico acknowledged in discovery pleadings that none of the corporate Plaintiffs "held general contracting licenses in North Carolina."[1] Exhibit 2, Plaintiffs' Response to Village of Sugar Mountain's First Set of Interrogatories and First Request for Production of Documents, *attached to* Motion for Sanctions of Defendant Village of Sugar Mountain, filed February 17, 2000, at 3. Section 87–1 of the North Carolina General Statutes requires that any corporation which undertakes a building project in excess of $30,000 be licensed unless the project is for the builder's personal use. Consent Order, at 1–2. General contracting without a license is illegal in North Carolina. *Id.* In December 1999, DRC was enjoined from general contracting in the State of North Carolina. *Id.,* at 3. Carrico signed the Consent Order on behalf of DRC and his signature was notarized. *Id.,* at 5.

Carrico alleges he first began doing business in Sugar Mountain in 1994 when the Plaintiff Bears Real Estate and Rentals, Inc. (Bears) purchased an existing real estate company. Complaint, at 3. Carrico

also owned Bears which was formed to market and sell the above condominiums. *Id.* Defendant Carlene Hall had been the office manager for the real estate company and continued on as an employee of Bears. *Id.* Carrico claims Hall embezzled $120,000 from the company and failed to pay a $40,000 tax liability. *Id.,* at 4. She continued in Bears' employ until June 1996. *Id.* Hall then became employed by Sugar Mountain as the Village Manager and Zoning Administrator. *Id.,* at 5.

Carrico acknowledges the Habib contracts required certain permits from the Village of Sugar Mountain. *Id.,* at 5. And, he claims that those permits were initially granted. *Id.* However, Carrico claims that after Hall became the Zoning Administrator she intentionally revoked permits in order to obtain revenge against him although the record does not indicate that criminal charges were brought against her. Defendant Jack Anderson, a village councilman, is alleged to have joined in this conduct in order to create business opportunities for his son. By June 1998, the zoning compliance permit for the condominium project had been revoked and· ultimately, Carrico and his companies were forced to withdraw from the contracts. Similar conduct is alleged as to another construction project in 1998 during which Carrico claims he was illegally fined $7,000 for violating a nuisance ordinance.

Attorney Frank Contrivo averred that he reviewed a transcript of a proceeding against Carrico and Bears by the North Carolina Real Estate Commission in which that Commission found that neither had a valid real estate broker or agent license. Affidavit of Frank J. Contrivo, *attached to* Brief in Support of Motion for Summary Judgment and Motion for Sanctions of Defendant Anderson, filed February 16, 2000. Carrico acknowledged in discovery pleadings that none of the Plaintiffs held indi-

---

1. In response to the motions for summary judgment, Carrico claims that although he was not licensed, he used a contractor employee who was properly licensed. The Consent Order entered in the Wake County

Superior Court explained that this was also unlawful under North Carolina law. DRC as well must have made proper application for licensure.

vidual real estate licenses; however, he maintained that Bears had a corporate real estate license. Plaintiffs' Response to Village of Sugar Mountain's First Set of Interrogatories, *supra.*

## IV. DISCUSSION

 Plaintiffs' § 1983 claims are that by revoking permits and failing to reissue them, Defendants deprived them of the right to do business and of property rights. It is also alleged that an improper fine was imposed and the ability to continue the projects was halted until the fine was paid, in violation of due process. When Carrico was told the projects could not go forward unless he and his businesses withdrew, this violated his right to equal protection. However, each of these claims fails because it is clearly established that Plaintiffs did not have a general contracting license. Without that license, Plaintiffs were not allowed by state law to build the structures at issue. Likewise, if Plaintiffs did not possess the requisite real estate broker license, Bears could not be not allowed to market and sell them.[2]

 State statutes which prohibit the performance of certain conduct without the appropriate licensing are constitutional. *Rice v. Norman Williams Co.,* 458 U.S. 654, 102 S.Ct. 3294, 73 L.Ed.2d 1042 (1982). In North Carolina, a general contractor involved in construction exceeding $30,000 in value is required to be licensed. N.C. Gen.Stat. § 87–1. A contractor who violates that statute is subject to criminal penalties. N.C. Gen.Stat. § 87–10. Moreover, a contract entered into by an unlicenced contractor is unenforceable. *Baker Construction Co., Inc. v. Phillips,* 333 N.C. 441, 426 S.E.2d 679 (1993). Thus, such a contractor has no right to sue for breach of contract. *Jenco v. Signature Homes, Inc.,* 122 N.C.App. 95, 468 S.E.2d 533 (1996); *Spivey and Self, Inc. v. Highview Farms, Inc.,* 110 N.C.App. 719, 431 S.E.2d 535 (1993). The contracts entered into by the Plaintiffs were void *ab initio* because none of them was licensed.

 Since Plaintiffs did not hold the appropriate licenses, they had no property rights to continue the business they had begun. "A property interest requires more than a 'unilateral expectation' that a permit or license will be issued; instead, there must be a 'legitimate claim of entitlement.'" *Biser v. Town of Bel Air,* 991 F.2d 100, 104 (4th Cir.1993) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). "Property rights can be created and defined by state laws, but laws calling for issuance of a license or permit cannot create property rights unless 'the [state actor] lacks *all* discretion to deny issuance of the permit or to withhold its approval. Any significant discretion conferred upon the local agency defeats the claim of a property interest.'" *Love v. Pepersack,* 47 F.3d 120, 122–23 (4th Cir.1995) (quoting *Gardner v. Baltimore Mayor & City Council,* 969 F.2d 63, 68 (4th Cir.1992)) (other citations omitted) (emphasis in original). Because the Plaintiffs lacked the appropriate licensing, the Defendants were entirely within their discretion to refuse to reissue the zoning compliance permit and to insist that a licensed contractor take over the projects. The fact that Carrico "believes that [Hall and Anderson] acted arbitrarily on his application does nothing to change the fact that he was not deprived of any entitlement or right." *Biser, supra.*

 Likewise, Plaintiffs' claims that the Defendants violated their right to contract are void. "There is no positive federal 'right to contract' at all times on all subjects, though individuals are generally free to contract in a manner and with objectives that do not violate local law, and this liberty may give rise to an interest protected by the Fourteenth Amendment's Due Process Clause." *Love, supra,* at n. 4 (citing *Roth, supra,* at 572, 92 S.Ct. 2701).

**2.** Carrico's argument that Bears held a corporate license does not establish it held a broker or agent license.

Plaintiffs' contracts to build the projects at issue violated state law because they lacked the appropriate licenses.

Thus, all of Plaintiffs' federal claims lack merit and all claims over which this Court has original jurisdiction have been dismissed. The undersigned declines to exercise supplemental jurisdiction over the state law causes of action and the action will be dismissed. 28 U.S.C. § 1367(c)(3).

 The Defendants have also moved for sanctions because Plaintiff Carrico failed to appear at a deposition. However, he has filed proof that six days prior to the deposition he mailed, by next-day delivery, notices that he could not attend a deposition until after February 28, 2000. Defendants also claim he failed to properly respond to interrogatories and requests to produce. The undersigned concludes that the imposition of sanctions is unwarranted due to Carrico's *pro se* status at the time he answered the interrogatories.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' motions for summary judgment are hereby **GRANTED** in part, and Plaintiffs' federal claims are dismissed by way of Judgment filed herewith.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over the state law claims and they are dismissed by way of Judgment filed herewith.

**IT IS FURTHER ORDERED** that the Defendants' motions for sanctions are hereby **DENIED.**

### *JUDGMENT*

For the reasons stated in the Memorandum and Order filed herewith,

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED** that the Plaintiffs' federal claims are hereby **DISMISSED WITH PREJUDICE** in their entirety; and

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that, the Court having declined to exercise supplemental jurisdiction over Plaintiffs' state law claims, such claims are hereby **DISMISSED** in their entirety.