690

BEURAN D. INNIS, Plaintiff-Appellant, *v.* ELMHURST DODGE, INC., *et al.*, Defendants-Appellees (Chrysler Corporation *et al.*, Defendants; City and Suburban Hydraulic Service, Inc., Third-Party Defendant).

First District (2nd Division)   No. 83-1986

Opinion filed July 31, 1984.—Rehearing denied September 4, 1984.

Thomas P. Valenti, of Karr & Valenti, Ltd., and Brian J. McManus, of Brian J. McManus & Associates, Ltd., both of Chicago, for appellant.

Robert S. Soderstrom, James P. DeNardo, and Richard J. Rettberg, all of McKenna, Storer, Rowe, White & Farrug, of Chicago, for appellees.

JUSTICE DOWNING delivered the opinion of the court:

The issue in this case is whether air compressor equipment resting on an elevated concrete platform constitutes a "structure" within the meaning of the Illinois Structural Work Act (the Act). (Ill. Rev. Stat. 1979, ch. 48, par. 60 *et seq.*). Plaintiff, Beuran D. Innis, contests the propriety of the trial court's denial of his motion to reconsider the entry of summary judgment in favor of the defendants-appellees in this matter, Elmhurst Dodge, Inc. (Elmhurst), and Abko Properties, Inc. (Abko).[1]

---

[1]Although summary judgment was also entered in favor of another defendant joined in this action, Chrysler Corporation, plaintiff's notice of appeal and his opening and reply briefs only designate Elmhurst and Abko as the appellees before this court.

On June 2, 1980, personnel of Elmhurst's service department noticed that certain air compressors located in the northwest corner of the building were malfunctioning. These compressors, which provided the power essential for proper operation of hydraulic car lifts and various pneumatic tools, rested on a concrete platform suspended approximately seven feet above ground level. Plaintiff's services were thereupon requested in order to determine the nature of the problem and to do the necessary repair work.

Plaintiff and his son arrived at Elmhurst on the afternoon of June 3, 1980. Following a conversation with the service manager, Thomas O. Mink, plaintiff asked permission to use a ladder in order to climb up onto the platform. Mink obtained a ladder from the body shop and gave it to plaintiff who, without unfolding it, leaned it up against the concrete platform at an angle of approximately 15 to 20 degrees. This particular ladder extended from the ground up to a point approximately six to eight inches above the platform surface. There were no rubber feet on the legs of the ladder.

Some time after discovering an air leak in the compressor equipment, plaintiff decided to descend the ladder in order to install a shut-off valve into a water drain line. He stepped off of the platform and positioned both of his feet on a ladder rung. Just as plaintiff started to proceed down the rungs of the ladder, it slipped out from underneath him. Plaintiff fell straight to the floor; his left heel initially hit the ground, after which he fell backward and struck his head on the concrete surface.

On February 11, 1981, plaintiff filed a complaint at law seeking to recover damages for injuries sustained as a result of his fall in Elmhurst's service department. Abko was eventually joined as a defendant in this matter due to its ownership of the realty upon which Elmhurst conducted business. In plaintiff's second amended complaint, he alleged that Elmhurst violated the Act by causing the faulty erection or placement of the ladder used to facilitate repair work on Elmhurst's air compressors. Defendants subsequently filed a motion for summary judgment which was predicated on the claim that the work being performed by plaintiff at the time of his injuries did not fall within the scope of the Act.

The trial court entered summary judgment in favor of Elmhurst and Abko on April 5, 1983. Specifically, the court held that the compressor equipment did not constitute a "structure" within the meaning of the Act. It is the propriety of this determination which plaintiff now contests on appeal.

I

The sole issue for resolution involves the scope of section 1 of the Act, which provides, in pertinent part, that:

"*** all *** ladders *** erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon ***." Ill. Rev. Stat. 1979, ch. 48, par. 60.

■ The basic purpose of the Act is to protect workers engaged in extrahazardous activities from certain risks inherent in the nature of their employment. (*Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 1090, 428 N.E.2d 1051, *appeal denied* (1982), 91 Ill. 2d 557.) Illinois courts have liberally construed the Act in order to effectuate this benevolent purpose. *Simmons v. Union Electric Co.* (1984), 121 Ill. App. 3d 743, 751, 460 N.E.2d 28, citing *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 151, 317 N.E.2d 573; *Burke v. Illinois Power Co.* (1978), 57 Ill. App. 3d 498, 516, 373 N.E.2d 1354, *appeal dismissed* (1979), 71 Ill. 2d 607.

■ We are of the opinion that the word "structure," as used in the Act, was intended by the legislature to refer to the factual situation involved herein. In support of a contrary interpretation, defendants cite and heavily rely on the case of *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 328 N.E.2d 318. There, the supreme court held that a large, self-propelled power shovel used in strip-mining coal was not a structure within the meaning of the Act. To classify the movable item of personalty otherwise, would, according to the *Farley* court, be tantamount to judicial recognition that "there is no point at which inclusion of other vehicles or items of personal property may logically be denied if the work being done on those objects requires some form of support or scaffold." 60 Ill. 2d 432, 437.

To the contrary, regarding the case at bar, the inherent nature of air compressor machinery situated atop an elevated concrete platform in an automotive service department precludes any reasonable connotation of self-propulsion and movability. We note that the record before us is devoid of any specifications as to the number, size and weight of the compressors as well as the method, if any, by which they were mounted to the platform's surface. Nonetheless, we

assume that machines capable of delivering the power necessary for safe operation of eight hydraulic lifts ("that come up out of the ground to raise and lower trucks and cars") must certainly be an integral part of Elmhurst's service facility. It was even the concession of the service manager, Mink, that the compressor equipment was "vital" to proper functioning of the service department. Therefore, in view of the nature and extent of the compressor system, and its location on a concrete platform, a part of the building, it is our conclusion that at the time of plaintiff's injuries, he was, in fact, repairing a structure within the meaning of the Act. Compare *Warren v. Meeker* (1973), 55 Ill. 2d 108, 302 N.E.2d 54.

We find direct support for our holding in the recent decision of *Simmons v. Union Electric Co.* (1984), 121 Ill. App. 3d 743. In *Simmons*, the appellate court held that the plaintiff was engaged in structural work when he was injured during the reparation of sump pump equipment resting on the concrete floor of an ash pit. 121 Ill. App. 3d 743, 749, 751-52.

Under the facts of the present case, the Illinois Structural Work Act likewise applies as a matter of law. Consequently, the lower court erroneously entered summary judgment in defendants' favor.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand this cause for trial in accordance with the views expressed herein.

Reversed and remanded.

HARTMAN, P.J., and STAMOS, J., concur.