(No. 60890.—

BEURAN D. INNIS, Appellee, v. ELMHURST DODGE, INC., *et al.*, Appellants.

*Opinion filed July 17, 1985.*

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom, James P. DeNardo and Richard J. Rettberg, of counsel), for appellants.

Karr & Valenti, Ltd., of Chicago (Thomas P. Valenti, of counsel), for appellee.

JUSTICE MORAN delivered the opinion of the court:

Plaintiff, Beuran D. Innis, brought this action to recover for injuries he allegedly received during a fall from a ladder in the service department at defendant Elmhurst Dodge, Inc. (Elmhurst). The fall occurred while plaintiff was repairing air-compressor equipment, which rested on an elevated concrete platform. Abko Properties, Inc., the owner of the realty on which the car dealership is situated, and Chrysler Realty Corporation also were named as defendants.

Plaintiff's second amended complaint was in six counts. Counts I, III and V were premised on liability under the Structural Work Act (the Act) (Ill. Rev. Stat. 1979, ch. 48, par. 60 *et seq.*). The remaining counts charged defendants with negligence. Defendants filed a motion for summary judgment as to counts I, III and V, contending that the work being performed by plaintiff at the time of the occurrence was not covered by the Act. The circuit court of Cook County granted defendants' motion, finding that the air-compressor equipment did not constitute a "structure" as that term is used in the Act. The appellate court reversed and remanded the cause for further proceedings on the merits. (126 Ill. App. 3d 690.) Thereafter, this court granted defendants leave to appeal (87 Ill. 2d R. 315).

The sole issue is whether the air-compressor equipment which rested on an elevated concrete platform was a "structure" within the meaning of the Act.

On or before June 3, 1980, personnel at Elmhurst contacted plaintiff's place of business and requested that plaintiff inspect and repair the air-compressor equipment in Elmhurst's service department. The compressors, which provide the power to operate the hydraulic car lifts and other air-powered equipment in the department, had been malfunctioning. The compressors were situated

in the northwest corner of the service department, and rested on a concrete platform which was approximately seven feet from floor level. The record does not indicate if the compressors were attached to the platform.

The plaintiff and his son arrived at Elmhurst that afternoon. Plaintiff spoke briefly with Thomas O. Mink, Elmhurst's service manager, and then requested a ladder so that he could inspect the compressors. Mink provided plaintiff with a stepladder.

Plaintiff stated at his deposition that he did not unfold the stepladder. Instead he leaned it unfolded against the platform at a 15- to-20 degree angle. At that angle, the ladder extended approximately six to eight inches above the platform surface. After climbing the ladder and inspecting the equipment, he determined that the compressor had an air leak. He decided to descend the ladder in order to install a shut-off valve on the water-drain line. According to plaintiff, he placed both feet on a rung of the ladder in order to begin his descent. At that moment, the ladder slipped out from underneath him, and he fell to the floor. Plaintiff alleged in his complaint that he suffered several injuries from the fall.

The relevant section of the Act for purposes of this case is section 1 (Ill. Rev. Stat. 1979, ch. 48, par. 60). That section in pertinent part provides:

"[A]ll scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon ***."

Under section 9 of the Act, a right of action accrues to

persons injured by wilful violations of the Act or wilful failure to comply with its provisions. Ill. Rev. Stat. 1979, ch. 48, par. 69.

This court has determined that the Act should be given a liberal interpretation in order to effectuate its purpose of protecting persons engaged in extrahazardous occupations of working in and about construction, repairing, altering, or removing buildings, bridges, viaducts and other structures. (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 127.) However, the Act has never been interpreted to cover any and all construction activities. (*Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 536.) Instead, the Act's application with regard to ladders is limited to their use in performing activities specified in the statute (*Long v. City of New Boston* (1982), 91 Ill. 2d 456, 466), upon structures listed in the statute. *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 434-37.

Specifically, the Act requires in part that an activity be performed upon a "house, building, bridge, viaduct, or *other structure*." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 48, par. 60.) In construing the phrase "other structure," the court in *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, applied the doctrine of *ejusdem generis*. The doctrine provides that when a statutory clause specifically describes several classes of persons or things and then includes "other persons or things," the word "other" is interpreted as meaning "other such like." (60 Ill. 2d 432, 436.) Thus, the court in *Farley* concluded that the General Assembly intended to limit the application of the Act to "structures of the general type specified therein," *i.e.*, houses, buildings, bridges and viaducts. 60 Ill. 2d 432, 436-37.

We do not think that the air compressors in the present case are sufficiently akin to a "house, building, bridge," or "viaduct" so as to constitute a "structure"

within the meaning of the Act. The trial court correctly observed that the compressors, although presumably large and heavy, are nothing more than movable pieces of equipment. They cannot be considered a structure as that term is intended by the Act. Plaintiff contends, however, that the compressors were an integral part of Elmhurst's service facility and, as such, are structures. We disagree. The fact that a certain piece of equipment is important in the operation of a particular business enterprise is irrelevant for the purpose of determining whether the item is a structure under the Act. None of our previous opinions have extended the Act to cover movable equipment of the type under consideration here. Compare *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432 (large, self-propelled power shovel is not a structure), with *Warren v. Meeker* (1973), 55 Ill. 2d 108 (grain bin is a structure), and *Navlyt v. Kalinich* (1972), 53 Ill. 2d 137 (sewer system is a structure).

Plaintiff cites the recent decision in *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, as support for his argument that the compressors are structures. In *Simmons*, the plaintiff was instructed to make a service call at defendant's power plant. Upon arrival, he found that the ash pit, a part of the power-plant building, was flooded. He further learned that the cause of the flooding was the malfunctioning of a sump pump located in the ash pit. In order to relieve the flooding condition, it was necessary to repair the pump. The plaintiff descended a permanently affixed ladder into the pit, slipped, fell, and, as a result, sustained injuries. The court rejected defendant's contention that the plaintiff had not been repairing a "structure" when he sustained his injuries. The court observed that repair of the sump pump was necessary in order to relieve flooding in the ash pit. It concluded that repair of the pump was equivalent to repair of the pit itself. (104 Ill. 2d 444, 452-53.)

Here, by contrast, it cannot be said that repair of the compressors was necessary in order to prevent damage to Elmhurst's building or platform. As a result, plaintiff's reliance on *Simmons* is misplaced.

For the reasons given, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE SIMON, dissenting:

The Structural Work Act (the Act) (Ill. Rev. Stat. 1979, ch. 48, par. 60 *et seq.*) was adopted "in order to afford 'broad protection to working men.' " (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 127.) I dissent from the majority opinion because I believe this fundamental principle of the Act is violated by holding that the platform and compressors did not comprise a "structure" for purposes of the Act.

This court's recent decision in *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, applied a meaning of "structure" broad enough to encompass the plaintiff's activity here. Just as the ash pit was the "structure" in *Simmons*, the concrete platform was the structure in this case. The platform housed the compressors just as the ash pit housed the sump pumps. In both cases the plaintiff fell from a permanent structure resulting in an injury covered by the Act.

Finally, the majority's reliance on *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, is misplaced. In *Farley* this court held that a "mobile power shovel" (60 Ill. 2d 432, 435) was not a "structure." Unlike *Farley*, the Elmhurst Dodge facility is a permanent building. The plaintiff was required to ascend the building to the platform in order to fix an inoperative machine which was placed in a specific area and was not meant to move.

158

The plaintiff was repairing a machine permanently affixed to a platform not intended to move—a structure for purposes of the Act—unlike the plaintiff in *Farley* whose injury resulted from a fall from a large machine never intended to be attached to a permanent structure.

CLARK, C.J., and GOLDENHERSH, J., join in this dissent.