CHARLENE FRENCH, Indiv. and as Special Adm'r of the Estate of Jerome French, Deceased, Plaintiff-Appellant, v. BARBER-GREENE COMPANY *et al.*, Defendants (The City of Chicago, Defendant-Appellee).

First District (2nd Division)  Nos. 1—89—3014, 1—90—1507, 1—91—1183 cons.

Opinion filed June 18, 1991.

Craig S. Mielke and Robert A. Larsen, both of Murphy, Hupp, Foote, Mielke & Kinnally, of Chicago, for appellant Barber-Greene Company.

Drumke & Patterson, Ltd., of Chicago (Ronald A. Drumke and Danielle M. Jaeschke, of counsel), for appellant Charlene French.

Robert A. Chaney, of Purcell & Wardrope, Chartered, of Chicago, for appellee Monarch Asphalt Company.

Gurion & Lewis, of Chicago (David W. Ott, of counsel), for appellee City of Chicago.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Jerome French was fatally injured after falling from a paving machine manufactured by defendant Barber-Greene Company (Barber-

Greene), and while he was employed by Monarch Asphalt Company (Monarch). At the time of the incident, Monarch was performing under a contract with defendant City of Chicago (the City). When plaintiff sought to hold the City liable under the provisions of the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, par. 60 *et seq.*) and to recover also from Barber-Greene for manufacturing an allegedly defective product, Barber-Greene filed a third-party action against Monarch. The trial court upheld the City's motion for judgment on the pleadings, from which plaintiff appeals, and allowed Monarch's motion for summary judgment, which Barber-Greene appeals; the two appeals have been consolidated.

Gary Heinrich, French's fellow employee and the only witness to the occurrence, testified that on September 4, 1987, he was working with him on the paving machine when French stopped the machine in a normal manner by bringing both steering levers back to neutral. Immediately before the machine came to a stop, Heinrich was looking down at the asphalt, but after the machine stopped, he looked up at French and saw him getting up out of his seat. French began to stand up smoothly and his feet were on the deck, and when he was almost upright, his shoulders fell over and he fell directly to his right. He did nothing to prevent his fall and did not appear to have slipped. According to the testimony of decedent's wife, French had operated Barber-Greene pavers for 21 years prior to his death.

Plaintiff's allegation that the City is liable under the Structural Work Act is based upon her contention that it failed to provide decedent a safe place to work while taking part in the paving of a stretch of Sacramento Avenue and on the following language of the statute:

> "All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or *other structure*, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 48, par. 60.)

The trial court agreed with the City that a street is not a structure under the Act, granted its motion for judgment on the pleadings, and

denied plaintiff leave to file a fourth amended complaint and a copy of the contract between Monarch and the City.

French sought recovery against Barber-Greene on the grounds that:

> "a. Said machine lacked handrails or metal guards at or near the operating station thereof.
>
> b. Said machine lacked seat belts or other restraining devices to protect the operator thereof in the event that he either slipped or fell from said machine.
>
> c. Said machine lacked warning labels or literature advising the operator thereof to obtain reasonably necessary restraints or other devices to inhibit his falling from said machine to the pavement.
>
> d. Said machine lacked corrugated steel flooring or other nonslip [sic] flooring devices at the position of the operator's station in order to prevent the operator from slipping and falling to the ground and the pavement, several feet below the operator's station."

Defendant, Barber-Greene, denied the allegations of plaintiff's complaint and thereafter filed a third-party complaint seeking contribution against Monarch, alleging that Monarch participated in several negligent acts. The only allegation which is relevant to this appeal states that Monarch:

> "Failed to properly instruct and supervise plaintiff's decedent regarding the safe operation of the Barber-Greene paver."

The trial court granted Monarch its motion for summary judgment against Barber-Greene, stating that "Hinrich [sic] testified that plaintiff did not take a step, and that he did not slip \*\*\*. Furthermore, the paver had come to a normal stop \*\*\*."

Plaintiff and the City agree that whether the trial court properly granted judgment on the pleadings in favor of the City depends entirely upon its determination that a street is not a structure under the Act. Plaintiff contends that in arriving at his decision, the trial judge would have had to conclude that a street is a structure if he had given consideration to the contract between the City and Monarch, and plaintiff's proposed fourth amended complaint. Plaintiff argues that the City "understood and contemplated that Monarch would be required to build or rebuild structures such as Sacramento Avenue under the terms of [its] contract." However, the trial court, as noted above, denied plaintiff leave to file a fourth amended complaint along with the contract, and plaintiff does not assign such denial as error. But even if we were to assume, *arguendo*, that plaintiff has not

thereby waived this argument, "in construing the Act we must ascertain and give effect to the legislature's intent in enacting the statute." (*Kirwan v. Welch* (1989), 133 Ill. 2d 163, 165.) Thus, whether the City and Monarch intended the street to be a structure for their own purposes is irrelevant to whether a street is a structure under the Structural Work Act, for we must determine the *legislative* intent behind the Act.

The City, citing *People v. Capuzi* (1960), 20 Ill. 2d 486, maintains that under the principle of *ejusdem generis*, when a general word follows an enumeration of specific things, the general term is held to apply only to things of the same kind as those specifically mentioned. As our supreme court has held, "when a statutory clause specifically describes several classes of persons or things and then includes ' "other" persons or things,' the word 'other' is interpreted as meaning 'other such like.' " (*Innis v. Elmhurst Dodge, Inc.* (1985), 107 Ill. 2d 151, 155, quoting *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 436.) "Thus, the court in *Farley* concluded that the General Assembly intended to limit the application of the Act to 'structures of the general type specified therein,' *i.e.*, houses, buildings, bridges and viaducts." *Innis*, 107 Ill. 2d at 155, quoting *Farley*, 60 Ill. 2d at 436-37.

■ Even if we were to accept plaintiff's contention that we should examine the sufficiency of her proposed fourth amended complaint, the only fact alleged therein about the nature of the street on which the decedent was working is that the street was "Sacramento Avenue at or near the Kennedy Expressway in the City of Chicago, Cook County, Illinois." We therefore hold that a street as alleged in the fourth amended complaint proferred to the trial court is not "sufficiently akin to a 'house, building, bridge,' or 'viaduct' so as to constitute a 'structure' within the meaning of the Act." *Innis*, 107 Ill. 2d at 155-56.

■ Barber-Greene charges that the trial court erred in awarding summary judgment in favor of Monarch because the trial court did not recognize Monarch's duty to warn decedent not to use the paving machine without safety restraints or that he should be admonished to sit down while operating the machine. While the trial judge did not directly address Barber-Greene's contention, the record reflects, as noted above, that plaintiff was sitting while the machine was moving, and it would be absurd to impose a duty upon Monarch to warn employees not to stand up after they stop their pavers.

Numerous decisions have held that "one supplying a chattel for another must warn of the dangerous conditions, 'if, but only if, he has

no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved.' " (*E.g.*, *Kirkman v. Kirkman* (1990), 195 Ill. App. 3d 393, 397, quoting Restatement (Second) of Torts §388, comment *k*, at 306 (1965).) Because any danger from the lack of restraints on the paver was open and obvious to decedent, and the employer did not have any more knowledge of that danger than did the employee, Monarch had no duty to warn him of the danger of falling off of it. (See *Kutzler v. AMF Harley-Davidson* (1990), 194 Ill. App. 3d 273, 277-78.) Accordingly, we conclude that the trial court properly awarded summary judgment in favor of Monarch.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

DiVITO and COCCIA, JJ., concur.