**PAVING EQUIPMENT OF The CAROLINAS INC.,**
Appellant,

v.

**M & N DEVELOPMENT COMPANY, Appellee.**

**No. 3:94CV199–P.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

May 19, 1995.

Richard M. Mitchell, Charlotte, NC, for appellant.

Herbert W. Hamilton, Rock Hill, NC, for appellee.

### ORDER

ROBERT D. POTTER, Senior District Judge.

**THIS MATTER** is before the Court on Paving Equipment of the Carolinas, Inc.'s (PECI), appeal from the Bankruptcy Court's decision granting summary judgment in favor of M & N Development Company ("M & N").

### PROCEDURAL BACKGROUND

This action was originally brought by M & N in the Court of Common Pleas for York County, South Carolina to remove a lien on real property held by PECI. PECI then filed a counterclaim alleging breach of contract against M & N. This action was subsequently removed to the Bankruptcy Court for the District of South Carolina and venue was transferred to the United States Bankruptcy Court for the Western District of North Carolina with the consent of both parties. M & N's Motion for Summary Judgment was heard in the Bankruptcy Court on February 3, 1994. The Bankruptcy Court granted Summary Judgment in favor of M & N on February 15, 1995. The Bankruptcy Court denied PECI's Motion to Alter or Amend Judgment on May 17, 1994.

On September 15, 1994 this Court dismissed PECI's appeal for failure to prosecute. On reconsideration, this Court, by Order filed October 26, 1994, allowed PECI to designate the record and move forward with the appeal. M & N filed a response brief on December 5, 1994. PECI filed a Reply on December 12, 1994 and an amended Reply on December 15, 1994.

### STANDARD OF REVIEW

Appellant raises on appeal the issue of whether the bankruptcy court erred by finding from the forecast of the evidence presented that no genuine issues existed as to any material facts regarding PECI's role as a general contractor on the Carolina Point project and the statute of limitations bar.

 Summary judgment is appropriate when the pleadings, responses to discovery, and the record reveal that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. (*See* Fed.R.Civ.P. 56(c) and Bankruptcy Rule 7056, applying Fed.R.Civ.P. 56 to adversary proceedings.) Accordingly, the judge's role in ruling on a motion for summary judgment is to determine, based on the parties' pleadings and affidavits, whether any material issues of fact exist that require a trial. If the only issues to be decided are issues of law, then summary judgment is proper. When considering motions for summary judgment, courts must view facts and inferences in the light most favorable to the party opposing the motion for summary judgment. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When, however, the evidence from the entire record could not lead a rational fact-finder to find for the non-moving party, no genuine issue for trial exists and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

■ On an appeal the district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous. (Bankruptcy Rule 8013). The Court has reviewed the briefs, the record on appeal and the relevant legal authorities. Based upon its review of this case, the Court finds that summary judgment was appropriately granted against PECI by the Bankruptcy Court.

## FACTS

The pertinent facts are as follows. PECI did grading and paving work for M & N at an industrial real estate park in York County, South Carolina, known as Carolina Point and also on other projects, including the Lake Wylie project, also in York County, South Carolina, and the Pineville Towne Center project, in North Carolina. PECI is not licensed as a general contractor in South Carolina or North Carolina. There was no written contract between the parties and PECI admits that "all paving on or in the development known as 'Carolina Point' was a part of a single continuous contract on the whole of that development." The last work done by PECI in Carolinas Point was the parking lot for the building located on Lot 33 on November 23, 1993.

## LEGAL DISCUSSION

The sum and substance of PECI's appeal is premised on their arguments that the South Carolina contractor licensing statute is not applicable to the work which they performed on the Carolina Point project. As grounds for that argument PECI asserts that (1) when strictly construed as required, their activities are not included in the definition of general contractor and not the type of work listed in the statute, and (2) that there are genuine issues of material fact concerning whether PECI performed multiple undertakings or a single undertaking on the Carolina Point project.

## 1. Applicable Statutes

The relevant South Carolina statutes read as follows

It shall be unlawful for any person coming within the definition contained in Sec. 40–11–10 to engage in or offer to engage in general ... contracting in this State without having first obtained a license as required by this chapter ...

S.C.Code § 40–11–100 (1976 *as amended*).

For purposes of this chapter:

A *"general contractor"* shall be one who for a fixed price, commission, fee, or wage undertakes or offers to undertake the construction or supervision of any building, highway, sewer, grading, improvement, reimprovement, structure, or part thereof, when the cost of the undertaking is thirty thousand dollars or more. Anyone who engages in such undertaking in this State shall be deemed to have engaged in the business of general contracting in this State.

S.C.Code § 40–11–10(1) (1976 *as amended*).

Also of some use to a proper interpretation and application of the statutes is the South Carolina Licensing Regulation § 29–5 which provides:

Under no circumstances shall a permit to bid, construct, or superintend the construction of any building, highway, public utility, improvement or reimprovement of any kind costing $30,000 or more be given prior to obtaining the required General Contractor's License....

The South Carolina Licensing Board for Contractors regulates licensing of general contracting under four major classifications, including, Building, Highway, Public Utility and Specialty. Under the Building classification the regulation provides that

This classification covers commercial, industrial, institutional and all types of residential building construction; covers all site work, *grading & paving of parking lots, driveways, sidewalks, curbs and gutters which are ancillary to the aforementioned types of construction.*

Under the Highway classification the regulation states that

This classification covers *grading, paving of all types* ... and repair and all incidental work.

The grading sub-classification further regulates contractors who provide

grading in preparation for roads, highways, railroad beds, building sites, parking lots and incidental work.

Lastly, the paving sub-classification covers

applying or repairing all types paving and surfacing materials on roads, highways, parking areas and all incidental work.

(*See* S.C.Code Regulations § 29–5) (emphasis added).

### 2. *Paving Activities under the South Carolina Licensing Statute*

Boiled to its essence PECI's first argument is that paving is not included among the activities enumerated under the South Carolina statutory definition for general contracting, § 40–11–10, and further that PECI is a subcontractor exempt from the statutory requirements. Therefore, or so appellant's argument goes, their activities were not unlawful, their role was not that of a general contractor, the South Carolina statute is not applicable to them, and the oral contract governing work at the Carolina Point project is therefore enforceable. PECI begins by accusing M & N of using regulatory provisions to bootstrap "paving" back into the scope of activity deemed illegal by South Carolina Code §§ 40–11–100 and 40–11–10.

■ Despite these arguments, for the reasons cited below, the Court finds that the grading and paving work performed by PECI on the roads and parking lots at the "Carolina Point" project clearly constitutes construction of a highway, grading, improvement, reimprovement, structure, *or part thereof* which exceeded the cost of thirty thousand dollars. Accordingly, the Court finds that PECI was not licensed as a general contractor in South Carolina and was thus prohibited from bringing an action to recover on this contract. The Appellant, in part admits as much, conceding that M & N "may have been entitled to partial summary judgment covering work PECI performed involving grading." Appellant also acknowledges

that in both North Carolina and South Carolina the self-proclaimed status "subcontractor" does not in and of itself exempt a party from the licensing requirement—a license is required if the type of work done is that which is referred to by the statute. *Florence Concrete Products, Inc. v. North Carolina Licensing Board for General Contractors,* 113 N.C.App. 270, 437 S.E.2d 877 (1994).

■ Based on this admission, the only issue remaining on this point then is whether or not the other activities performed by PECI on the various projects, including paving, is encompassed within the meaning of the statute governing the licensing requirements for a "general contractor" in South Carolina. PECI strenuously argues in accord with the rule of strict construction for criminal statutes, that the work which they performed is not embraced by the statute. However, the Court finds this argument to be both misplaced and disingenuous. Clearly, strict construction does not require such strained or narrow interpretation of language as to defeat the object of the statute. *See Southwestern Bell Tel. Co. v. Newingham,* 386 S.W.2d 663, 665 (Mo.App.1965). Furthermore, strict construction is that which confines its operation to cases which are clearly within not only the letter of the statute, but its spirit and purpose as well.

■ It is well settled that the starting point in determining legislative intent is the language of the statute itself and that if the legislative intent is clear, that ends the inquiry. *See, e.g., Newport News Shipbuilding and Dry Dock Co. v. Howard,* 904 F.2d 206 (4th Cir.1990); *United States v. Bassett,* 814 F.2d 905 (4th Cir.1987) (citations omitted).

Here, the unambiguous language of the statute provides, in pertinent part, that one who undertakes the construction of any building, highway, sewer, grading, improvement, reimprovement, structure, or part thereof when the cost of the undertaking is thirty thousand dollars or more must be licensed. These words are to be given their plain and ordinary meaning, *see, e.g., Jones v. Hanley Dawson Cadillac Co.,* 848 F.2d 803 (7th Cir.1988); *United States v. Stokley,* 881 F.2d 114 (4th Cir.1989), and under the rule of "ejusdem generis" the general word "part

thereof" following the more specific enumeration of particular classes of construction should, of course, be construed as applying to things of the same general class as those enumerated. *See, Samuels, Kramer & Co. v. C.I.R.,* 930 F.2d 975 (2d Cir.1991), *cert. denied,* 502 U.S. 957, 112 S.Ct. 416, 116 L.Ed.2d 436; *also, U.S. v. Cerio,* 831 F.Supp. 530 (E.D.Va.1993). In this case, applied to the South Carolina statute, that means parts of construction projects involving highways, grading, buildings, improvements, sewers and other structures are encompassed by the statute.

■ Furthermore, PECI's attempt to argue that the omission of the term "paving" from the statute exempts them from its application is ineffective for several reasons. First, as admitted in prior pleadings, paving was by no means the only construction activity performed by PECI on these projects. Mr. Yon, PECI's president, declared that

> I have one contract. What we did, this work, like I say, took on the form of sand to garage, resurfacing a street at Lake Wylie Mobile Home Park, putting in rip rap, overlay in a parking lot, doing street work, doing rough grading.... moving a pipe, putting stone to a pump station ..... [also, referring to the last work on Phase 2 on Lot 33] there was rework in the back ... originally it was paved ... [a]nd I went back in there to fix those places and resurfaced the back.

(Yon Deposition at p. 15, lines 21–25, p. 19, line 1, p. 30 lines 4–12). The Court finds this description of the work, while admittedly not entirely or specifically mentioned in the statutory language, to be the type intended to be included by the legislature under the umbrella of the contractor licensing statute.

In analyzing the similar North Carolina contractor licensing statute, the North Carolina Supreme Court in *Vogel v. Reed Supply Co. and Reed Supply Co. v. Da Pow Developers, Inc.,* 277 N.C. 119, 131–132, 177 S.E.2d 273 (1970), correctly noted that proper statutory interpretation "turns on the meaning of specific words contained in the statutory definition.... and [must be read] in context with the [remainder of the] words [in the statute]." The *Vogel* Court's first step in determining the scope and applicability of the statute then was to define certain of the terms included in the North Carolina licensing statute which were germane to the facts of that case. In doing so the *Vogel* Court restricted the meaning of the term "improvement" subject to its contextual connection to the terms "building" and "structure," as defined by that Court in order to demonstrate that the work at issue in that case was not an "improvement" and that work on "part of" a building or structure was not within the meaning of the North Carolina statute.

Confined to its facts this Court completely agrees with the *Vogel* analysis. However, the rule in *Vogel,* that a subcontractor need not be licensed, has been limited to its facts and is applicable only where the work in question is not the type of work referred to in § 87–1. *See Baker Construction Co. v. Phillips,* 333 N.C. 441, 448, 426 S.E.2d 679 (1993). Furthermore, that decision does not address the entire reach of the statutory language nor does it completely define the terms, grading, structure, improvements, highway, sewers, parts thereof, etc., which are found in the South Carolina statute. As defined below, the meaning encompassed by all of these terms supports the conclusion that these terms as used in § 40–11–10 have application to the facts in this case. In sum, given the broad context of the South Carolina licensing statute which refers to buildings, structures, highways, grading, improvements and parts thereof, the Court concludes that the tasks performed by PECI are clearly encompassed by the plain meaning of the statute.

■ For example, PECI's resurfacing of streets which were previously paved falls within the definition of "improvements." While the *Vogel* Court attempted to restrict the definition in relation to the words building and structure, it also noted that "as used here it [improvements] connotes the performance of construction work and presupposes the prior existence of some structure to be improved." *Id.* at 132, 177 S.E.2d 273. Outside the limiting context of buildings and structures, the *Vogel* Court noted that the word is sometimes used to refer to any enhancement in value, particularly in relation to

non-structural changes in land. Similarly, within the proper context of general contracting on construction projects, improvements may also include any permanent structure or other development, such as a street, sidewalks, sewers, utilities, etc. *Black's Law Dictionary* 757 (Del. 6th ed. 1990).

■ Another key word which the Court believes is directly applicable to the paving work performed by PECI is the term structure. That term is defined as "any construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner." *Black's Law Dictionary* 1424 (Del. 6th ed. 1990). It is without question that parking lots and roads are "pieces of work artificially built up in some definite manner." In fact the term paving or pavement is defined as the artificially covered surface of a public thoroughfare. *Merriam Webster's Collegiate Dictionary* 853 (10th ed. 1993). Accordingly, the Court finds that even strictly construed the paving work performed by PECI is within the fair meaning of the language used by the South Carolina legislature. Looking to the language of the statute itself the Court finds that the legislative intent is clear, PECI's activities are properly included therein, and that ends the inquiry.

However, in deference to PECI's arguments that the statute is ambiguous the Court has considered other sources in interpreting the statute. This Court finds that under the general rules of statutory construction it is not necessarily improper to look to § 29–5 of the South Carolina Code Regulations to determine the meaning of the specific words contained in the statutory definition of § 40–11–10 and, in this case, the scope of the activities covered by the licensing statutes. Notably, the statutory authority for § 29–5 is derived from Chapter 11 of Title 40. Additionally, the two statutory provisions contain similar and, in part, identical language and share the same purpose, context and subject matter, namely, controlling the licensing of general contractors in the interest of the public welfare—i.e., protection against the consequences of incompetent workmanship, imposition and deception.

As noted above, § 29–5 specifically requires that a license be obtained for grading and paving work which exceeds the threshold amount of $30,000. Appellant's own admissions eliminate any dispute regarding grading and as for the rest of PECI's activities on the South Carolina projects, they clearly fall within the ambit of the statute and the regulation. So, to the extent there exists any ambiguity, which the Court has previously determined there is not, the Court finds that the licensing regulations are suggestive of the legislative intent of § 40–11–10 and is therefore useful in interpreting the meaning and scope of that section.

Second, and less significantly, PECI accuses M & N of "trying to broadly construe a statute imposing criminal penalties" by arguing that paving falls under the enumerated term "structure." For the reasons stated above, the Court agrees with the Bankruptcy Court's conclusion that PECI's activities are within the meaning of the statute and further that the terms "structure ... or part thereof" include paving construction. The Court also finds PECI's accusation to be inconsistent in light of their previous argument in this matter.

Specifically, in making their argument regarding M & N's statute of limitations claims, the Appellant directed the Bankruptcy Court to the South Carolina Circuit Court's conclusion regarding § 29–5–90 of the South Carolina Code. That Court noted that § 29–5–90 specifically refers to service of the "Certificate of the Mechanic's Lien being made within ninety days after the person desiring to avail himself thereof ceases to labor on or furnish labor or material for such *building or structure.*" (*See* Appellant's Return and Brief on Amended Summary Judgment, filed January 31, 1994) (emphasis added). So, on the one hand Appellant attempts to avoid the licensing requirement by arguing that the building and structure referred to in § 40–11–10(1) does not encompass their activities and ought not be interpreted with respect to the same terms in § 29–5, while on the other hand Appellant attempts to demonstrate the timeliness of their mechanic's lien filing by arguing that the building and structure referred to in § 29–5–90 is applicable

and related to their claims for uncompensated labor for the same work. In any event, for the reasons noted above, the Court finds PECI's arguments on this point to be dubious and without merit.

Lastly, as noted by the Bankruptcy Court, PECI relies on case law interpreting the North Carolina contractors licensing law for the proposition that they are subcontractors rather than general contractors. As admitted by M & N, the respective statutes in North Carolina and South Carolina defining "general contractor" are almost identical and the words in such definitions should be construed strictly in favor of the Appellant. The applicable North Carolina statute is found in Article I of Chapter 87, and defines general contractor as follows:

> For the purpose of this Article any person or firm or corporation who for a fixed price, commission, fee or wage, undertakes to bid upon or to construct or who undertakes to superintend or manage, on his own behalf or for any person, firm or corporation that is not licensed as a general contractor pursuant to this Article, the construction of any building, highway, public utilities, grading or any improvement or structure where the cost of the undertaking is thirty thousand dollars ($30,000) or more shall be deemed a "general contractor" engaged in the business of general contracting in the State of North Carolina.

N.C.G.S. § 87–1 (1985). Two things are significant about PECI's attempt to use this statute in support of their argument that they are exempt subcontractors. First, and most importantly, South Carolina law is applicable in this situation and second, the South Carolina statute is meaningfully different.

This difference was highlighted by the North Carolina Supreme Court in *Vogel*, *supra*, which involved a variety of work including furnishing and installing windows, doors shelves and some roofing and painting. The *Vogel* Court expressly recognized that under the language appearing in the South Carolina statute licensing would be required under the facts of that case. In addressing the phrase "undertake to construct a building or structure" the *Vogel* Court held that

> they do not embrace parts or segments of a building or structure. They exclude any meaning the Legislature could have conveyed simply by adding the words "or any part thereof" following the word "structure" in line four of G.S. 87–1.

This is precisely what the South Carolina legislature accomplished in their version of the contractor licensing statute. Without directly referring to the *Vogel* decision, the Bankruptcy Court correctly noted that "[t]he South Carolina statute's reference to 'part thereof' indicates that the statutory definition encompasses anyone who undertakes to perform any of the specified tasks where the cost of the undertaking is $30,000 or more." So, examining the statute in light of its purpose and its unambiguous meaning, the Court finds the Bankruptcy Court did not commit clear error in its interpretation of the statute with respect to PECI's activities on the Carolina Point Project. PECI was a general contractor who undertook the construction of any building, highway, sewer, grading, improvement, reimprovement, structure, or part thereof within the meaning of the statute.[1]

### 3. *"Undertaking" and the $30,000 Statutory Minimum*

PECI also argues that the various jobs it undertook with M & N only rarely rose above the thirty thousand dollar threshold. In support of this contention PECI points to Invoice 9, *see* Schedule "F" to the Answer, Counterclaim and Petition which shows the following:

Paving in front of office buildings

| | |
|---|---|
| (36′ × 55′) | 7,800.00 |
| (60′ × 355′) | 16,566.00 |
| Road Paving (36′ × 275′), and extra stone (Specifications: 10″, 2″, and 2″) | 24,000.00 |
| Amount Due this Invoice | 48,366.00 |

---

1. Furthermore, in light of the definition of the term "structure" as set out above and the specific inclusion of the term "grading" within the statute, the Court finds that the same results would obtain under North Carolina law.

PECI argues that this represents three undertakings not one. The Court disagrees. The term undertaking is defined as the act of one who undertakes or engages in a project or business. *Merriam Webster's Collegiate Dictionary* 1289 (10th ed. 1993). The invoice above represents work performed as part of one project or undertaking. For example, if the agreement were to construct a driveway with the first third paved, the second third concrete, and the last third brick, common sense dictates that such an undertaking constitutes one project with three parts rather than three separate projects. *See Matter of Federated Dept. Stores, Inc.*, 114 B.R. 501 (Bankr.S.D.Ohio 1990) (For the proposition that courts must apply common sense when interpreting statutes). This remains true even if the invoice is broken out into three separate charges or takes place over an extended period of time. The same can be said for the projects engaged in here by PECI.

The Court has reviewed the numerous invoices and statement of accounts within the record, as well as the deposition of Mr. Yon, president of PECI, and finds that the Bankruptcy Court was correct in concluding PECI exceeded the thirty thousand dollar threshold on each undertaking with M & N. Despite notions to the contrary, the Court finds that Appellant's letter from Dwight G. Hayes, Staff Counsel to the South Carolina Department of Labor, Licensing & Regulation, bolsters this conclusion. Mr. Hayes correctly opined that work broken into stages would still be considered one project. That is precisely what Appellant's own exhibits demonstrate here, each of the three projects (Carolinas Point, Pineville Towne Center and Lake Wylie Mobile Home Park) totalled more than thirty thousand dollars. The Court agrees with Mr. Hayes' statement that "[t]he fact that a contractor has completed multiple projects for one individual would not cause the Board to look at those projects as one." Nor would the statute necessarily provide for a tallying of the work from different projects conducted at different locations by PECI in order to determine whether the statutory minimum had been surpassed. However, in this case there is clear evidence of three separate and distinct projects each of which exceeded the statutory minimum.

Again Appellant's own documents refer to "phases" of street work, grading, paving and installation done around several buildings on the three project sites. Mr. Yon described work on a main road this way

> In other words, on the main road, on the main service road, we did phase 1. In other words, he [Mr. Malpeli] wanted only to pave a certain portion. We did that; and then several years later, we did the rest of it.

(Yon Deposition at 17, line 5–8). Mr. Yon also stated in his deposition testimony that under the terms of the contract, M & N would only be required to pay PECI's material costs and the balance would not be due until completion of the development when PECI would be paid in the form of real estate from the development. (Yon's Deposition p. 20, lines 8–22; *see also,* Appellant's Brief at p. 9).

Here, the Court finds this statement supportive of M & N's position, and ultimately in accord with the Bankruptcy Court's conclusion, that the job was divided into phases and that PECI would complete a phase and then, perhaps dependent upon financial feasibility, finish the other phases of the project at some future time. Mr. Yon also submitted documents (account statements and invoices) all of which referred to the projects specifically by name. Mr. Yon's deposition of the accounting also relates to this point

> On Page 1, what I've done on the Pineville Towne Center and listed the total when the invoices and the activity to the best of my knowledge took place. On Page 2, I have done the same for the Carolinas Business Park ... [and] Page 3, done the same thing at the Lake Wylie Mobile Home Park. Number 4 or the next page, is M & N Development, I've got *Project* Pineville Town Center....

(Yon Deposition p. 36–37, lines 25, 1–11.) (emphasis added).

The Court finds that each of the separate tasks, assignments or jobs delineated by the invoices were part of the overall projects and not, as Appellant would have it, separate undertakings outside the scope of the statute. This is further substantiated by the fact,

admitted to by Mr. Yon, that M & N did not receive these invoices and that they were created after-the-fact. PECI argues further that "this can only support the conclusion that under the express terms of the contract, payment was not due upon the rendering of the services." (Appellant's Brief at p. 9). The Court would add that if Appellant's contention is true, payment therefore was due at the completion of the project. The Court finds that this admission utterly devastates PECI's argument that the Carolina Point job was not one undertaking. Nor does the fact that the phases took place over a number of months and years alter the Court's analysis. It is quite common that construction projects are broken into phases and, resultingly, the length of time from breaking ground until completion can be of considerable duration.

Lastly, another of Appellant's own admissions, this one in a prior state court proceeding, that "all paving on or in the development known as 'Carolina Point' was part of a single continuous contract on the whole of that development", reinforces the Court's reasoning with the reality of this case, namely, that PECI's work at Carolina Point was one project with several phases. In sum, the Court believes it clear from the plain language of the statute that the legislature intended for the licensing requirement to apply to projects and undertakings which exceeded $30,-000 and that such a requirement cannot be avoided simply by dividing or classifying such a project into numerous smaller "projects."

This unambiguous intent has been expressly recognized by the South Carolina Attorney General who opined that "breaking a project into two or more parts for the specific purpose of evading the spirit and intent of the contracting law is not lawful." 1806 Ops. Att'y Gen. 52 (1964–65). While there is no evidence of PECI's intent to evade the law or for that matter, evidence that PECI had knowledge of the contractor licensing law during the course of dealings between PECI and M & N, since that time and during the course of this litigation, PECI has been confronted with the fact that the statutory requirements were applicable to them. In response, PECI contends that they are exempt from the statute because the Carolina Point project was actually several projects performed as needed as part of an extended credit situation. Oddly, they make this argument in the face of admissions that the project was a "single contract" for which payment was not due until sometime after services were rendered when the development or project was completed. Indirectly, the arguments now made by PECI are precisely the type of conduct that the Attorney General was referring to as being violative of the contract licensing law.

If the Court were to follow PECI's suggestions the statute would have little or no effect and the licensing requirement would be a hollow one that could easily be avoided. Under their analysis, would-be general contractors undertaking construction projects could simply reconcile the undertaking itself into numerous separate so-called projects, assignments or undertakings totalling less than $30,000. This was clearly not the intent of the South Carolina legislature. It is well settled that Courts must construe statutes in such a way that effectuates, rather than frustrates, the legislative purpose and in doing so they must interpret statutes so that they carry out the intent of the legislature and avoid absurd results.

### CONCLUSION

▮ Accordingly, this Court finds that the Bankruptcy Court committed no error in concluding that PECI is subject to the state licensing requirement. As such, this Court also finds that the Bankruptcy Court did not commit error in holding that the alleged contract is illegal and unenforceable under South Carolina law. See Jackson v. Bi–Lo Stores, Inc., —— S.E. ——, 437 S.E.2d 168 (1993), citing Berkebile v. Outen, 311 S.C. 50, 426 S.E.2d 760, 762 (1993); see also, Urbatec v. Yuma County, 614 F.2d 1216, 1217 (9th Cir.), cert. denied, 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 49 (1980) (construing a similar Arizona statute as being a bar to actions by unlicensed contractors); and, Brady v. Fulghum, 309 N.C. 580, 308 S.E.2d 327 (1983) (adopting the rule that contract illegally entered into by unlicensed contractor is unenforceable by the contractor); Mill–Pow-

*er Supply Co. v. CVM Associates,* 85 N.C.App. 455, 458, 355 S.E.2d 245 (1987) (must be licensed to recover from the owner for breach of contract or on theory of *quantum meruit.*)

Having found no clear error by the Bankruptcy Court and therefore concluding that PECI cannot enforce the claims it has asserted because PECI was not a licensed general contractor in accordance with the South Carolina statutory requirements under §§ 40–11–10 and 40–11–100, the Court will not address whether or not the claims are further barred by the statute of limitations.

**NOW, THEREFORE, IT IS ORDERED** that the Bankruptcy Court's summary judgment in favor of M & N be, and hereby is, **AFFIRMED.**