The Honorable David W. Wyatt State Representative 159 Wyatt Lane Batesville, Arkansas 72501-7862
Dear Representative Wyatt:
I am writing in response to your request for my expedited opinion on the following question, which you have submitted on behalf of Independence County Judge Bill Hicks:
 Pursuant to the provisions of A.C.A. 14-38-101(2)(A)(ii) [sic:" A.C.A. § 14-38-101(b)(2)(A)(ii)"], would a mountain range with a four (4) lane federal/state highway, which is transverse from the bottom to the top of the range (such as Highway 167 over Ramsey Mountain), be considered a natural barrier?
You report the following factual background:
 On Friday, April 28, 2006, County Judge Bill Hicks held an incorporation hearing in Independence County Court pertaining to the Southside Community that is south of Batesville. As a result of the hearing and in order to prepare an Order in the case, Judge Hicks needs clarification regarding Arkansas Code Annotated 14-38-101, Section [(b)](2)(A)(ii).
A newspaper account of the referenced incorporation proceeding reports that the hearing involved a two-hour-long evidentiary inquiry, during which Judge Hicks received testimony regarding,inter alia, whether "the White River bridge and Highway 167 are manmade structures that cross natural barriers and [whether] Southside is inaccessible without the manmade structures."Batesville Daily Guard, May 5, 2006. Judge Hicks reportedly determined that while the status of the bridge was moot, a question remains whether Ramsey Mountain, which is traversed by a paved, four-lane highway, should be deemed a "natural barrier" rendering Batesville "inaccessible" from Southside, hence permitting Southside residents by law to incorporate without first obtaining the permission of the Batesville City Council. Judge Hicks reportedly advised the newspaper covering the proceeding: "I don't understand the law — it's very gray. How do you get anywhere without using manmade structures?" Judge Hicks reports that he will defer ruling on the incorporation petition until he has received counsel from this office and the Arkansas Legislative Council.
Having been informed of the filing of your request, counsel for an organization called Citizens for the Incorporation of Southside, Arkansas has written me, suggesting that he considers the pertinent inquiries to be:
 1. Whether Ramsey Mountain constitutes a natural barrier; and
 2. Whether highway 167 is a man-made structure that may not be considered for the purpose of determining rather [sic:" whether"] Ramsey Mountain is a natural barrier[.]
As discussed below, although your question is stated more generally, I consider counsel's breakdown of the issues to be accurate.
RESPONSE
I must respectfully decline to answer this question, which raises factual issues that are currently the subject of a judicial dispute to be resolved by the county judge acting in his capacity as the county court. Although I am statutorily obliged to render my opinion to members of the legislature and various state officials regarding matters of state law, A.C.A. §25-16-706, I am neither authorized nor equipped to opine on issues whose resolution will necessarily involve making factual determinations. Resolving such issues is a task traditionally left to the courts. In order to avoid encroaching upon exclusively judicial prerogatives, it has long been the policy of this executive-branch office to avoid rendering opinions on matters that are pending in the courts.
Although I have declined to offer my opinion as to what should be the appropriate resolution of the issue before the county court, I can and will offer my analysis of the law that I believe the county court should consider in fashioning its judgment. As you note in your request, the pertinent legislation is A.C.A. §14-38-101 (Supp. 2005), which provides in pertinent part:
 (b)(1) The court shall not approve the incorporation of any municipality if any portion of the territory proposed to be embraced in the incorporated town shall lie within five (5) miles from the corporate limits of an existing municipal corporation, unless the governing body of the municipal corporation has affirmatively consented to the incorporation by written resolution.
 (2)(A)(i) The five-mile limitation shall not apply if the area proposed to be incorporated is separated from the corporate limits of an existing municipality by a natural barrier that makes the area to be incorporated inaccessible to the existing municipality.
 (ii) If the area proposed to be incorporated is accessible only by a bridge or other man-made structure, then the area shall be considered inaccessible for purposes of this subsection.
At issue initially is the question of whether a particular mountain range — or, in the case of the factual circumstances giving rise to your question, whether Ramsey Mountain — would in the absence of a highway traversing it constitute a "natural barrier" rendering the incorporated and unincorporated communities "inaccessible" to each other. This is a factual question that I am neither equipped nor authorized to address. It is further a question I must decline to address in light of the pending litigation. However, I can and will report that one of my predecessors, with whom I concur, offered the following analysis of this question in Ark. Op. Att'y Gen. No. 95-389:
 The statute . . . requires a determination as to whether this river is "a natural barrier that makes the area to be incorporated inaccessible to the existing municipality." This is a factual question which this office is unable to answer in a bare legal opinion. The terms "natural barrier" and" inaccessible" are not defined in the relevant statute. Neither are they defined in any Arkansas statute or case which I have found. Webster's Seventh New Collegiate Dictionary (1972) defines the term "barrier," among other meanings, as "a factor that tends to restrict the free movement and mingling of individuals or populations." Id. at 71. The same text defines the word "inaccessible" as "not accessible." Id. at 421. The word "accessible" is defined as "easy of access." Id. at 5.
The definition of these terms has not changed since 1995.
In Opinion No. 95-389, my predecessor discussed the application of a version of A.C.A. § 14-38-101 that did not include subsection (b)(2)(A).[1] This subsection may well have been enacted in reaction to my predecessor's understandable suggestion that the existence of a bridge over a river might bear on the factual question of whether the river constituted a "natural barrier" rendering the communities on each side "inaccessible" to each other. In the wake of the enactment of this subsection, for purposes of determining whether what would otherwise have been an "inaccessible" community may incorporate without the consent of an incorporated community lying within a five-mile distance, the existence of a "bridge or other man-made structure" providing access between the communities is immaterial. The initial pertinent question is only whether the geographical feature would have constituted a "natural barrier" in the absence of the "bridge or other man-made structure." If the mountain would not have constituted a "natural barrier" without the road, the court would obviously not need to address the second question discussed below — namely, whether a road constitutes a "structure." However, if the mountain without the road would have constituted a "natural barrier," the remaining question would be whether the road qualifies as a "man-made structure." If the county court were to determine that the road qualifies as such, the statute would require the court to ignore the existence of the road and hence to allow the citizens of Southside to incorporate without the approval of the Batesville City Council. Conversely, if the county court were to conclude that the road is not a "structure," it would have to consider whether the existence of the road removes the "natural barrier" that Ramsey Mountain would otherwise be.
In addressing whether the highway across Ramsey Mountain is a "structure," the court will necessarily be guided by the principle that a statute must be construed just as it reads, giving the words their ordinary and usually accepted meaning in common language. Edwards v. State, 347 Ark. 364, 64 S.W.3d 706
(2002). Nothing is taken as intended that is not clearly expressed. State ex rel. Sargent v. Lewis, 335 Ark. 188,979 S.W.2d 894 (1998). At issue, then, will be whether the term "structure" can in fact be read as including a four-lane paved highway.
Viewed from an ordinary-language perspective, given that a four-lane paved highway is obviously "constructed," it would at first blush clearly appear to be a "structure." However, as Judge Hicks further reportedly acknowledged, the law on this matter is indeed "very gray."
Black's Law Dictionary (8th ed. 2004) defines the term "structure" as follows:
 1. Any construction, production, or piece of work artificially built up or composed of parts purposefully joined together a building is a structure.
This definition, or its functional equivalent, has been offered in numerous cases considering whether some man-made construction qualified as a "structure." See, e.g., Cun-En Lin v. Holy FamilyMonuments, 777 N.Y.S.2d 248 (2004); People v. Moyer,635 P.2d 553 (Colo. 1981); Watson Industries v. Shaw, 69 S.E.2d 505
(N.C. 1952); U.S. Fidelity Guaranty Co. v. Southland LifeInsurance Co., 22 F.2d 731 (5th Cir. 1927); Favro v. State,46 S.W. 932 (Tex.Crim.App. 1898).
In my opinion, the question of whether a highway is a construction "artificially built up or composed of parts purposefully joined together" is debatable. Although a paved roadway clearly qualifies as "infrastructure,"[2] it does not necessarily follow that a highway is a "structure" as defined above. Some courts that have addressed this question in a wide variety of contexts, some of which may not be applicable, have held that a road is a "structure." See, e.g., Horton v.Mitchell, 29 P.3d 870 (Ariz.App. 2001) (roadway a "structure" under subdivision restrictions); Paving Equipment of Carolinas,Inc. v. M N Development Co., 182 B.R. 425 (W.D.N.C. 1995) (licensing requirement for contractors who perform work on "structures" includes paving roads); Achen-Gardner Inc. v.Superior Court in and for County of Maricopa, 809 P.2d 961
(Ariz.App. 1990) (public street improvement a "structure" under competitive bidding statutes); Beyt v. Woodvale PlaceApartments, 297 So.2d 448 (La.App. 1974) (wide, hard-surfaced boulevard a "structure" within provisions of building restriction); Village of Niles Center v. Industrial Commission,21 N.E.2d 745 (Ill. 1939) (maintaining and repairing public street is work on "structure" under compensation act); State,for Use of E.I. DuPont De NeMours Co. v. Coda, 138 S.E. 324
(W.Va. 1927) (permanently improved highway a "structure" triggering bond requirement under applicable statute); WestVirginia Sand Gravel Co. v. Royal Indemnity Co., 128 S.E. 439
(W.Va. 1925) (same); City of Rock Island v. IndustrialCommission, 122 N.E. 82 (Ill. 1919) (city street paved with asphalt a "structure" under compensation act); Mendoza v.Central Forest Co., 174 P. 359 (Cal.App. 1918) (road on farm development part of "structure" covered by mechanic's lien statute).
Other courts that have addressed the issue have concluded that a road is not a "structure." See, e.g., Dilluvio v. City of NewYork, 744 N.E.2d 138 (N.Y.A.D. 2000) (repaving project on road not work on a "structure" within meaning of scaffolding statute);Spears v. State, 698 N.Y.S.2d 135 (N.Y.A.D. 1999) (highway at grade not a "structure" within meaning of scaffolding statute);French v. Barber-Greene Co., 576 N.E.2d 193 (Ill.App. 1991) (street not a "structure" under Structural Work Act even though contract between city and injured worker's employer stated otherwise); McLaughlin v. Industrial Board, 117 N.E. 819 (Ill. 1917) (common public dirt road not a "structure" under compensation act); compare Garabedian v. Westland,796 N.E.2d 439 (Mass.App. 2003) (airstrip on land owner's land not a "structure" and hence ten-year statute of limitations on protest did not apply).
It is impossible to glean any bright-line rule from these cases. I mention them only to provide the county court with some case law addressing the issue as possible guidance in its deliberations. Given the factual nature of the issues, and in light of my policy regarding matters pending before courts, I will not attempt to opine on the ultimate issue before the county court.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JHD/cyh
[1] The legislature enacted A.C.A. § 14-38-101(b)(2)(A)(ii) pursuant to Acts 2001, No. 1831, § 1.
[2] Black's Law Dictionary (8th ed. 2004) defines the term "infrastructure" as follows:
 The underlying framework of a system: esp. public services and facilities (such as highways, schools, bridges, sewers, and water systems) needed to support commerce as well as economic and residential development.